Robert A. Scher
Michael P. Richman
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 682-7474
Fax: (212) 682-2329
email: rscher@foley.com

-and-

Geoffrey Goodman (*admitted pro hac vice*)
Joanne Lee (*admitted pro hac vice*)
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60610
Phone: (312) 832-4500
Fax: (312) 832-4700

*Attorneys for Appellants Langston Law Firm, PA,
Joseph C. Langston, and Timothy R. Balducci*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WORLDCOM, INC., et al.,<br><br>    Debtors. | Chapter 11<br>Jointly Administered<br><br>Case No. 02-13533 (AJG) |
| THE LANGSTON LAW FIRM, PA, JOSEPH C. LANGSTON, and TIMOTHY R. BALDUCCI,<br><br>    Appellants,<br><br>    v.<br><br>THE STATE OF MISSISSIPPI, STACEY PICKERING in his capacity as Auditor for the State of Mississippi, and PHIL BRYANT, in his capacity as former Auditor for the State of Mississippi,<br><br>    Appellees. | Case No. 08-C-04331<br><br>Adversary Proceeding No. 07-02044 (AJG)<br><br><br>**<u>OPENING BRIEF OF APPELLANTS</u>**<br><br>  **ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................................iv

JURISDICTIONAL STATEMENT .................................................................. 1

ISSUES PRESENTED FOR REVIEW .............................................................. 1

STATEMENT OF THE CASE ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

I.     THE PLAINTIFFS PROSECUTE THE STATE'S CLAIMS AGAINST THE
DEBTORS IN 2005 ................................................................................... 2

II.    THE STATE, THE PLAINTIFFS, AND THE DEBTORS ENTER INTO A
VALID AND BINDING SETTLEMENT AGREEMENT ................................ 3

III.   THE BANKRUPTCY COURT APPROVES THE SETTLEMENT
AGREEMENT AND ENTERS AN ORDER RETAINING JURISDICTION
OVER THE ENFORCEMENT OF THE SETTLEMENT AGREEMENT ...... 4

IV.   BRYANT INITIATES HIS COLLATERAL ATTACK ON THE
BANKRUPTCY COURT'S SETTLEMENT ORDER ................................... 5

V.    THE PLAINTIFFS INITIATE AN ADVERSARY PROCEEDING ................ 6

VI.   THE APPELLEES FILE THEIR ABSTENTION MOTION AND INITIATE A
PROCEEDING IN MISSISSIPPI STATE COURT ...................................... 7

VII.  THE BANKRUPTCY COURT GRANTS THE ABSTENTION MOTION. .... 9

SUMMARY OF ARGUMENT ......................................................................... 9

ARGUMENT .................................................................................................... 10

I.     THE APPLICABLE STANDARDS OF REVIEW ...................................... 10

II.    "MANDATORY ABSTENTION" UNDER 28 U.S.C. § 1334(C)(2) DOES NOT
APPLY TO THIS DISPUTE ..................................................................... 11

        A.    Mandatory Abstention Does Not Apply Because This Case Is A Core
Proceeding.......................................................................................... 12

               1.    This Case Is A Core Proceeding "Arising In" A Chapter 11 Case ........... 13

i

2.    This Case Is A "Core Proceeding" Because It Is A "Matter Concerning The Administration Of The Estate" ...................................... 16

B.    The Appellees Cannot Establish Four Of The Remaining Elements Required For Mandatory Abstention ..................................................... 18

1.    This Proceeding Does Not Arise Under State Law .................................. 19

2.    Section 1334 Of The Judicial Code Is Not The Only Source Of The Bankruptcy Court's Jurisdiction Over This Case ...................................... 20

3.    The Appellees Had Not "Commenced" The State Court Action At The Time The Plaintiffs Filed This Adversary Proceeding ...................... 22

4.    This Proceeding Cannot Be "Timely Adjudicated" In State Court .......... 23

III.    DISCRETIONARY ABSTENTION IS NOT WARRANTED IN THIS DISPUTE ....... 24

A.    Courts Should Exercise Their Discretion To Abstain Sparingly ......................... 25

B.    An Analysis Of The Twelve Factors Courts Consider Upon A Request For Discretionary Abstention Weighs Strongly Against Abstention ......................... 26

1.    This Dispute May Have An Impact Upon The Administration Of The Debtors' Estates ................................................................................ 26

2.    State Law Issues Do Not Predominate Over Bankruptcy Issues .............. 26

3.    The Applicable State Law Is Neither Difficult Nor Unsettled ................. 27

4.    The Appellees Had Not Commenced The State Court Action When This Case Was Initiated ........................................................................... 28

5.    The Settlement Order Provides An Independent Basis For Jurisdiction ............................................................................................... 28

6.    This Case Bears A Direct Relationship To The Bankruptcy Proceeding ............................................................................................... 29

7.    The Substance Of This Action Is A Core Proceeding ............................. 29

8.    It Is Not Feasible Or Appropriate To Sever The State Law Claims ......... 29

9.    The Burden On The Bankruptcy Court's Docket Is Outweighed By Considerations Of Judicial Economy....................................................... 30

10.    The Plaintiffs' Filing Of This Case In Bankruptcy Court Was Not
       Motivated By Forum Shopping ................................................................ 30

11.    The Appellees Have Not Requested A Jury Trial .................................... 31

12.    While The Debtors Are Not Parties To This Dispute, They Were
       Parties To The Settlement Agreement ...................................................... 31

IV.    THE BANKRUPTCY COURT'S ABSTENTION ORDER AND OPINION ARE
       INADEQUATE.................................................................................................. 32

**CONCLUSION** ......................................................................................................... **33**

NYC_265266.1

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

Am. Booksellers Assoc., Inc. v. Houghton Mifflin Co., Inc.,
    1998 WL 436364 (S.D.N.Y. 1998) ................................................................21

Comco Assocs. v. Faraldi Food Indus., Ltd.,
    170 B.r. 765 (E.D.N.Y. 1994) ................................................................17, 18

DiLeo v. Ernst & Young,
    901 F.2d 624 (7th Cir. 1990) ................................................................32

Figures v. Bd. of Pub. Utils. of City of Kansas City, Kan.,
    967 F.2d 357 (10th Cir. 1992) ................................................................21

Gentry v. Gentry,
    207 B.R. 146 (E.D. Ky. 1999) ................................................................15, 21

In re AHT Corp.,
    265 B.R. 379 (Bankr. S.D.N.Y. 2001) ................................................................18, 23

In re Ames Dept. Stores, Inc.,
    2006 WL 1288586 (Bankr. S.D.N.Y. 2006) ................................................................23

In re Balco Equities Ltd., Inc.,
    323 B.R. 85 (Bankr. S.D.N.Y. 2005) ................................................................26

In re Ben Cooper, Inc.,
    896 F.2d 1394 (2d Cir. 1990) ................................................................15

In re Cedar Chemical Corp.,
    294 B.R. 224 (Bankr. S.D.N.Y. 2003) ................................................................14, 15

In re Chateaugay Corp.,
    109 B.R. 613 (S.D.N.Y. 1990) ................................................................16

In re Cody, Inc.,
    281 B.R. 182 (S.D.N.Y. 2002) ................................................................26

In re Colarusso,
    382 F.3d 51 (1st Cir. 2004) ................................................................19, 26

In re Consol. Lewis Inv. Corp.-Ltd. P'ship,
    78 B.R. 469 (Bankr. M.D. La. 1987) ................................................................22, 28

In re Container Trans., Inc.,
    86 B.R. 804 (Bankr. E.D. Pa. 1998) ................................................................22, 28

iv

In re Delorean Motor Co.,
    155 B.R. 521 (9th Cir. 1993) ........................................................................................10, 31

In re Fibermark,
    369 B.R. 761 (Bankr. D. Vt. 2007) ....................................................................................20

In re Ionosphere Clubs, Inc.,
    111 B.R. 423 (Bankr. S.D.N.Y. 1990) ................................................................................16

In re Keene Corp.,
    182 B.R. 379 (S.D.N.Y. 1995) ............................................................................................13

In re McCory Corp.,
    160 B.R. 502 (S.D.N.Y. 1993) ............................................................................................13

In re McMahon Books, Inc.,
    173 B.R. 868 (Bankr. D. Del. 1994) ...................................................................................21

In re Pan Am Corp.,
    16 F.3d 513 (2d Cir. 1994)..................................................................................................11

In re Petrie Retail, Inc.,
    304 F.3d 223 (2d Cir. 2002)..........................................................................................12, 13

In re Prudential Lines, Inc.,
    170 B.R. 222 (S.D.N.Y. 1994)..................................................................................10, 17, 18

In re River Ctr. Holdings, LLC,
    288 B.R. 59 (Bankr. S.D.N.Y. 2003) ..............................................................................28, 29

In re RNI Wind Down Corp.,
    348 B.R. 286 (Bankr. D. Del. 2006) ......................................................................... 19-20, 27

In re S.D. Phillips Constructors, Inc.,
    45 F.3d 702 (2d Cir. 1995) .................................................................................................12

In re Si Yeon Park, Ltd.,
    198 B.R. 956 (Bankr. C.D. Cal. 1996)..........................................................................19, 27

In re Steffan,
    97 B.r. 741 (Bankr. N.D.N.Y. 1989) ...................................................................................16

In re Sterling Optical Corp.,
    302 B.R. 792 (Bankr. S.D.N.Y. 2003)........................................................................ passim

In re Thomas Van Riper, Inc.,
    1999 WL 184111 (E.D.N.Y. 1999)................................................................................13, 15

v

In re TL Adm. Corp.,
   337 B.R. 827 (Bankr. S.D.N.Y. 2006) .............................................................17, 18

In re U.S.H. Corp. of N.Y.,
   280 B.R. 330 (Bankr. S.D.N.Y. 2002) .............................................................19, 27

In re United States Lines,
   197 F.3d 631 (2d Cir. 1999) ....................................................................................15

In re Wood,
   825 F.2d 90 (5th Cir. 1987) ....................................................................................13

In re WorldCom, Inc. Sec. Litig,
   293 B.R. 308 (S.D.N.Y. 2003) .............................................................................12, 23

In the Matter Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,
   6 F.3d 1184 (7th Cir. 1993) ............................................................................. passim

In the Matter of Rimsat, Ltd.,
   98 F.3d 956 (7th Cir. 1996) ....................................................................................23

LTV Corp. v. Back,
   201 B.R. 48 (Bankr. S.D.N.Y. 1996) ........................................................ 16, 20-21

McClelland v. Grubb & Ellis Consulting Servs. Co.,
   377 B.R. 446 (Bankr. S.D.N.Y. 2007) ...................................................................21

Mt. McKinley Ins. Co. v. Corning, Inc.,
   399 F.3d 436 (2d Cir. 2005) ...................................................................................10

Norkin v. DLA Piper Rudnick Gray Cary, LLP,
   2006 WL 839079 (S.D.N.Y. 2006) ...................................................... 14-15, 16, 28

Private Action Tr. v. Bennett,
   2008 WL 1990669 (S.D.N.Y. 2008) ...................................................................11, 25

Rahl v. Bande,
   316 B.R. 127 (S.D.N.Y. 2004) ...............................................................................25

Wilfong v. United States,
   991 F.2d 359 (7th Cir. 1993) ..................................................................................10

Williams v. Citifinancial Mtg. Co.,
   256 B.R. 885 (B.A.P. 8th Cir. 2001) .......................................................................31

Winstar Holdings, LLC v. The Blackstone Group, L.P.
   2007 WL 4323003 (S.D.N.Y. 2007) ................................................................. passim

**FEDERAL STATUTES**

11 U.S.C. 101 <u>et seq.</u>.................................................................................................................2

28 U.S.C. 1334 ................................................................................................ <u>passim</u>

28 U.S.C. 157(b)(2) ........................................................................................ <u>passim</u>

28 U.S.C. 158(a) ....................................................................................................................1

**FEDERAL RULES**

Fed. R. Bankr. P. 9019 ..........................................................................................................4

Fed. R. Civ. P. 60 ..................................................................................................................6

NYC_265266.1

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under Section 157 of this title.").   The Bankruptcy Court entered a final judgment in the present case on April 2, 2008.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the Bankruptcy Court erred as a matter of law in failing to accord finality to its Settlement Order as against the collateral attack attempted to be made against the Settlement Order by the Appellees in a subsequently commenced state court lawsuit.

2.      Whether the Bankruptcy Court committed reversible error in determining that mandatory abstention was required in this case.

3.      Whether the Bankruptcy Court committed reversible error in determining that permissive abstention was appropriate in this case.

## STATEMENT OF THE CASE

On September 21, 2007, the Langston Law Firm, PA, Joseph C. Langston, and Timothy R. Balducci (collectively, the "Plaintiffs" or "Appellants") initiated an adversary proceeding (the "Adversary Proceeding") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above captioned chapter 11 cases by filing a complaint for declaratory relief (the "Complaint") against the State of Mississippi (the "State") and Phil Bryant, in his capacity as the Auditor for the State ("Bryant," and together with the State, the "Appellees").   (R1.)   In their Complaint, the Plaintiffs sought a declaration that the Appellees could not (as then threatened) commence state court litigation seeking to undo settlement

1

payments made to the Plaintiffs under a final bankruptcy court order in 2005. (Id.) In response, on December 21, 2007, the Appellees filed a motion for abstention (the "Abstention Motion") with the Bankruptcy Court (R6) and the Plaintiffs filed a motion for summary judgment (the "Summary Judgment Motion") on Counts I and II of their Complaint. (R4.) Upon a hearing on both Motions, on April 2, 2008, the Bankruptcy Court entered an order granting the Abstention Motion (the "Abstention Order"). (R28.) The Bankruptcy Court did <u>not</u> issue any ruling with respect to the Summary Judgment Motion. (<u>Id.</u>)

The Plaintiffs appeal the Abstention Order.

## STATEMENT OF FACTS

### I. THE PLAINTIFFS PROSECUTE THE STATE'S CLAIMS AGAINST THE DEBTORS IN 2005

On July 21, 2002 and certain dates thereafter, WorldCom, Inc. ("WorldCom") and certain of its direct and indirect subsidiaries (collectively, the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq.</u> (the "Bankruptcy Code"). By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases (the "Chapter 11 Cases") were consolidated for procedural purposes and are being jointly administered as Case No. 02-13533 (AJG). (R5 at ¶ 6; R9 at ¶ 6.)

On October 3, 2003, the Bankruptcy Court entered an Order Confirming the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code, dated October 21, 2003. (R5 at ¶ 7; R9 at ¶ 7.) On April 20, 2004, the Plan became effective in accordance with its terms, pursuant to which WorldCom was merged into MCI Communications, Inc. ("MCI"), with MCI being the surviving entity. (<u>Id.</u>) The State filed five proofs of claim in the Chapter 11 Cases, alleging that MCI owed it over $1 billion in taxes, penalties and interest (the "State Proofs of Claim"). (R5 at ¶ 8; R9 at ¶ 8.)

2

On or about September 29, 2004, the Attorney General for the State, James M. Hood III (the "Attorney General"), entered into a retention agreement with the Plaintiffs (the "Retention Agreement"). (APP26[1]-APP31.) The Retention Agreement provided that two attorneys—Joseph Langston and Timothy Balducci—would be designated as "Special Assistant Attorneys General" for the State for purposes of pursuing certain tax deficiency claims against the Debtors. (APP27.) The Retention Agreement also provided that the Plaintiffs would be responsible for investigating, researching and filing claims in any appropriate court or courts or before any appropriate government agencies. (Id.)

The Retention Agreement provided for a structured contingent fee schedule based upon the total amount of any settlement and on the legal state of the case at the time of settlement (before or after the initiation of litigation), with a cap of 25%. (APP30.) The Retention Agreement further provided that these fees and expenses would be paid from the gross recovery in the case. (APP28.)

## II. THE STATE, THE PLAINTIFFS, AND THE DEBTORS ENTER INTO A VALID AND BINDING SETTLEMENT AGREEMENT

On or about March 16, 2005, MCI filed an objection to the State's Proofs of Claim (the "MCI Objection") arguing that the claims should be disallowed in their entirety for a variety of technical and substantive reasons. (R5 at ¶ 11; R9 at ¶ 11.) In April 2005, after extensive negotiations among the parties, the State and the Debtors entered into a settlement agreement (the "Settlement Agreement"). (APP33-APP61.) The Settlement Agreement resolved, among other things, (a) the amount and priority of the State Claims (APP40-APP45), and (b) the amount

---

[1] "APP" refers to the pages in the Appellant's Appendix.

of attorneys' fees and costs the Plaintiffs would receive in their role as counsel to the State (APP45).

Specifically, pursuant to the Settlement Agreement, MCI agreed to pay the State $100 million and to transfer certain of its buildings and property to the State in satisfaction of the State's claimed tax liabilities as set forth in the State Proofs of Claim. (Id.). In addition, the amount of attorneys' fees payable to the Plaintiffs was an integral part of the Settlement Agreement. Pursuant to the terms of the Retention Agreement, and based upon the amount of the settlement, the Plaintiffs were entitled to almost $17 million in attorneys' fees and expenses. (APP30.) However, under the Settlement Agreement, the Plaintiffs agreed to accept $14 million in attorneys' fees and expenses for their services. (APP45 at ¶8(ii).) The parties also agreed that an additional $4.2 million would be donated to the Children's Justice Center of Mississippi. (Id. at ¶ 8(iii).)

The Plaintiffs also agreed as part of the Settlement Agreement to release the Debtors and their agents from any claims or other causes of action other than their right to be paid $14 million under that agreement. (APP45-APP47.) The Settlement Agreement was by its terms subject to approval by the Bankruptcy Court. (APP40 at ¶ 3.) The Settlement Agreement further provided that it was "binding upon and shall inure to the benefit of the Parties thereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, officers, employees, and shareholders." (APP49 at ¶ 17.)

III.    **THE BANKRUPTCY COURT APPROVES THE SETTLEMENT AGREEMENT AND ENTERS AN ORDER RETAINING JURISDICTION OVER THE ENFORCEMENT OF THE SETTLEMENT AGREEMENT**

On or about May 9, 2005, MCI filed a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order approving the Settlement Agreement (the "9019 Motion"). (APP65-APP79.) Notice was provided to all

interested parties, including the State (APP75-79), and a hearing to approve the Settlement Agreement was held on May 13, 2005. Neither the State, nor any other interested party, objected to approval of the Settlement Agreement.

The 9019 Motion was granted and the Settlement Agreement was approved by an Order of the Bankruptcy Court dated May 13, 2005 (the "Settlement Order"). (APP81-APP82.) The Settlement Order provided that the Bankruptcy Court would retain jurisdiction "over the Parties and the subject matter of the Motion and the [Settlement] Agreement to the extent necessary to enforce and resolve any disputes arising over the consummation of the Agreement." (APP82.)

Neither the State nor any other party timely appealed or moved for rehearing or reconsideration of the Settlement Order. The Settlement Order therefore became a final order.

## IV.    BRYANT INITIATES HIS COLLATERAL ATTACK ON THE BANKRUPTCY COURT'S SETTLEMENT ORDER

Notwithstanding the finality of the Settlement Order to which the State was a party, almost a year and a half later, on October 19, 2006, another party purporting to represent the State--the State Auditor, Appellee Phil Bryant--launched a collateral attack on the portion of the Settlement Order directing the payment of legal fees and costs to the Plaintiffs. (APP146-APP158.) On November 20, 2006, Bryant demanded that the $14 million in fees and costs approved by the Bankruptcy Court to be paid to the Plaintiffs be turned over to the State. (APP179-APP180.) The asserted basis for this demand was that the payment to the Plaintiffs approved by the Bankruptcy Court was allegedly improper under Mississippi law, an argument that no representative of the State ever asserted when the 9019 Motion was pending and approved in 2005. (Id.)

About a year later, on September 10, 2007 (and, at that time, over two years after the Bankruptcy Court entered the Settlement Order), Bryant sent a letter to the Attorney General

requesting the Attorney General demand repayment of the $14 million in legal fees and costs. (APP182.)  This demand was accompanied by a draft complaint, which communicated a threat to commence a lawsuit in Mississippi State Court to set aside the $14 million paid to the Plaintiffs pursuant to the Settlement Order.  (APP183-APP188.)

## V.    THE PLAINTIFFS INITIATE AN ADVERSARY PROCEEDING

The threat posed by Bryant's draft complaint significantly raised the level of controversy from mere demand to imminent lawsuit and created a sufficient case or controversy ripe for adjudication as a declaratory judgment action.   As a result, the Plaintiffs commenced a declaratory judgment action in the Bankruptcy Court, in part pursuant to the Bankruptcy Court's retention of jurisdiction to enforce the Settlement Agreement and its own Order, in order to reaffirm the finality of the Settlement Order and declare that Bryant had no legal basis on which to commence an out-of-time collateral attack on that federal court order.  (R1.)  Count I of the Complaint specifically sought a declaratory judgment that the State and its agent, Bryant, waived any right to challenge, or were otherwise estopped from challenging the Settlement Agreement. (Id. at ¶¶ 54-63.)  Count II of the Complaint sought a declaratory judgment based on the Appellees' failure to meet the standards for relief under Federal Rule of Civil Procedure 60.  (Id. at ¶¶ 64-72.)

On November 2, 2007, the Appellees answered the Complaint and also filed a counterclaim (the "Counterclaim"), alleging the exact same claims as those contained in the draft complaint attached to the September 10, 2007 letter.  (R2.)

The following facts are irrefutable:  (a) the Settlement Order became a final order in 2005 (APP81-APP82); (b) the Debtors provided proper notice of the Settlement Agreement by serving the 9019 Motion on the State and all parties entitled to notice thereof (APP75-APP79); (c) the State is bound by the terms of the Settlement Agreement as a party to that agreement (APP49 at ¶

17); (d) the time for disavowing, objecting to or appealing the Settlement Order has long since passed; and (e) no basis has been asserted for reopening the Settlement Order under any provision of the Bankruptcy Rules, the Federal Rules of Civil Procedure or any other applicable law. The Appellees do not dispute those facts. Their position, as apparently adopted by the court below, is that their suit to undo the Bankruptcy Court-approved settlement payment to the Plaintiffs does not alter the settlement approved by the Bankruptcy Court and should not be considered as a challenge to any provision of it. Because the Bankruptcy Court in 2005 expressly approved the settlement payment to the Plaintiffs, a suit in 2007 to compel the Plaintiffs to relinquish that money to the State on the basis that the payment to the Plaintiffs was illegal in 2005 under Mississippi law is unquestionably an attack on the 2005 Settlement Order, and the argument that it is something outside the settlement that can be pursued without limit is a fiction.

Given these undisputed facts and well-established principles of applicable law, on December 21, 2007, the Plaintiffs filed a Motion for Summary Judgment on Counts I and II of their Complaint, on the basis that the State and its purported agent, Bryant, should be barred, as a matter of law, from attacking any of the terms of the Settlement Agreement and Order, including the payment of attorneys' fees and costs to the Plaintiffs, under the doctrines of res judicata, equitable and judicial estoppel, and waiver. (R4.)

## VI.    THE APPELLEES FILE THEIR ABSTENTION MOTION AND INITIATE A PROCEEDING IN MISSISSIPPI STATE COURT

Pursuant to the Bankruptcy Court's scheduling order (R3), the Appellees filed with the Bankruptcy Court their Abstention Motion (R6), the same day the Plaintiffs moved for summary judgment (R4). Unbeknownst to the Plaintiffs, because it had not been served (and was not served until January 3, 2008), the Appellees filed a complaint in the Mississippi state court (the

7

"State Court Action") <u>just one day</u> before filing their Abstention Motion in a transparent (and futile) attempt to meet the "action commenced" requirement for abstention relief. (APP479-APP485.) The State Court Action's complaint asserts, verbatim, those claims already before the Bankruptcy Court via the Appellees' Counterclaim. (<u>Id.</u>) On January 17, 2008, the Appellees filed their First Amended Complaint in the State Court Action, replacing Stacey Pickering ("Pickering") as the State Auditor.

On January 30, 2008, in order to preserve their objections to the state court's jurisdiction over the lawsuit, the Plaintiffs filed a notice of removal of the State Court Action to the United States District Court for the Southern District of Mississippi (the "Mississippi District Court"). (APP678.) On February 6, 2008, filed a motion to transfer (the "Transfer Motion") the action to the Southern District of New York. (<u>Id.</u>)

On February 26, 2008, the Bankruptcy Court held a hearing on both the Summary Judgment Motion and Abstention Motion. (R21.) At that time, the Court indicated that it would take the matters under advisement. (<u>Id.</u> at 37:13-18.) That same day, the Appellees filed a motion for remand (the "Remand Motion") in the State Court Action with the Mississippi District Court. (APP678.) On March 17, 2008, before the Bankruptcy Court had ruled on the Abstention or Summary Judgment Motion, during a conference call with the parties' counsel, the Mississippi District Court indicated that it planned on granting the Remand Motion and denying the Transfer Motion. (<u>Id.</u>) In light of the conference call, that same day, the Plaintiffs filed a motion to delay the entry of a remand order, in order to prevent any inconsistent rulings between the Mississippi District Court and the Bankruptcy Court. (APP680-APP682.)

**VII.    THE BANKRUPTCY COURT GRANTS THE ABSTENTION MOTION.**

On April 2, 2008, the Bankruptcy Court issued an order granting the Appellees' Abstention Motion.  (R28.)  The Bankruptcy Court specifically refrained from ruling on any other matter, including the Summary Judgment Motion.  (Id.)

According to the opinion attached to the Abstention Order (the "Bankruptcy Court Opinion"), the Bankruptcy Court ruled that abstention was appropriate under both discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1), as well as mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2).  (Id.)  The Bankruptcy Court incorrectly held that the Adversary Proceeding was a non-core proceeding involving solely state law claims.

## SUMMARY OF ARGUMENT

The fundamental flaw in the Bankruptcy Court's Opinion is its singular focus on the allegations in the Appellees' Counterclaim—specifically, whether the Attorney General had the authority under Mississippi law to enter into the attorneys' fee agreements with the Plaintiffs. While the Appellees' Counterclaim may assert alleged state law claims, the merits (or lack thereof) of such claims are not at issue in this case.  Indeed, the Appellees' claims are not able to be adjudicated, as they barred by the Plaintiffs' claims of res judicata, estoppel and waiver.  The Plaintiffs indisputably bring their claims under federal law—specifically, to enforce a Bankruptcy Court Order approving a settlement agreement under Bankruptcy Rule 9019.  The Plaintiffs' claims are "core proceedings" involving a federal court order and "arise in" the Debtors' Chapter 11 Cases.

Consequently, the Bankruptcy Court committed reversible error for the following reasons:  First, the Appellees fell far short of establishing the six elements necessary to apply mandatory abstention under 28 U.S.C. § 1334(c)(2).  Because this case is a "core proceeding" involving, among other things, the construction of a federal court order, the Appellees'

mandatory abstention argument does not even survive this Court's threshold determination.  In addition, the Appellees cannot establish four of the remaining five required elements of mandatory abstention.  Mandatory abstention therefore does not apply to this case.

Second, it was an abuse of discretion for the Bankruptcy Court to have abstained under the "permissive abstention" provisions of 28 U.S.C. § 1334(c)(1).  Courts weigh twelve factors in determining whether permissive abstention is appropriate.  Due to, among other things, (a) the Bankruptcy Court's jurisdiction to enforce its own order, and (b) the predominance of bankruptcy issues over alleged state law issues in this case, an analysis of these twelve factors weighs strongly against abstention.

Finally, the Bankruptcy Court committed reversible error by failing to support its Abstention Order with sufficient findings.

## ARGUMENT

### I.    THE APPLICABLE STANDARDS OF REVIEW

Because the issue of mandatory abstention turns upon a jurisdictional question and the construction of applicable statutes (28 U.S.C. § 1334(c)(2)), it is a question of law subject to de novo review.  See Stoe v. Flaherty, 436 F.3d 209, 212 (3d Cir. 2006); In re Delorean Motor Co., 155 B.R. 521, 524 (9th Cir. 1993); see also Mt. McKinley Ins. Co. v. Corning, Inc., 399 F.3d 436, 447 (2d Cir. 2005) (reviewing de novo the bankruptcy court's conclusions regarding "core jurisdiction" in the context of mandatory abstention).

The issue of discretionary abstention under 28 U.S.C. § 1334(c)(1) should be reviewed for an abuse of discretion.  See In re Prudential Lines, Inc., 170 B.R. 222, 228 (S.D.N.Y. 1994).  Although this is a deferential standard, the reviewing court must nonetheless "conduct a 'meaningful review' of the [lower court]'s decision."  In the Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 6 F.3d 1184, 1194 (7th Cir. 1993) (quoting Wilfong v. United States,

10

991 F.2d 359, 364 (7th Cir. 1993). In doing so, the Court should consider that "federal courts generally should exercise their jurisdiction if properly conferred and that abstention is the exception rather than the rule." Id.

## II.     "MANDATORY ABSTENTION" UNDER 28 U.S.C. § 1334(C)(2) DOES NOT APPLY TO THIS DISPUTE

The Bankruptcy Court erroneously concluded that it was required to abstain from hearing this case under the "mandatory abstention" provision codified in § 1334(c)(2) of title 28 of the United States Code (the "Judicial Code"). See 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Id.

Courts have repeatedly cautioned that "[a]bstention is but a narrow exception to the exercise of federal jurisdiction" and should thus be exercised rarely. In the Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 6 F.3d 1184, 1194 (7th Cir. 1993); see also In re Pan Am Corp., 16 F.3d 513, 516 (2d Cir. 1994) (transfer to the bankruptcy court is the "rule," while abstention by the bankruptcy court, the "exception"). Federal courts may abstain for only a few "extraordinary and narrow exceptions." Private Action Tr. v. Bennett, No. 07 Civ. 8165(GEL), 2008 WL 1990669, at *8 (S.D.N.Y. May 7, 2008). A Bankruptcy Court is required to abstain from hearing a dispute only when the movant establishes each of the following elements: (a) the abstention motion was timely; (b) the action is a "non-core" proceeding that is "related to a case under title 11" but not "arising in a case under" or "arising under" the Bankruptcy Code; (c) the

11

action is based upon a state law claim; (d) the sole basis for federal jurisdiction is section 1334; (e) an action is commenced in state court; and (f) the action is capable of being timely adjudicated in state court.  See In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 331 (S.D.N.Y. 2003).  Although all six elements are required for mandatory abstention to apply, the Second Circuit has held that a threshold determination of whether a dispute is a core proceeding should be made before considering the remaining five factors, because whether a proceeding is a "core proceeding" under 28 U.S.C. § 157 is dispositive on the question of mandatory abstention.  See In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002); see also In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 708 (2d Cir. 1995) ("[A]bstention is only mandated with respect to non-core matters.").

Here, because this case is a "core proceeding," the Appellees' mandatory abstention argument does not even survive this Court's threshold determination.  In addition, the Appellees cannot satisfy four of the five remaining mandatory abstention elements.[2]  Mandatory abstention therefore does not apply to this case.

### A.    Mandatory Abstention Does Not Apply Because This Case Is A Core Proceeding

Mandatory abstention is inapplicable to this case because it is a "core proceeding." Petrie, 304 F.3d at 232 (holding that when a matter constitutes a "core-proceeding, the mandatory abstention provisions of section 1334(c)(2) are inapplicable").

Section 157(b)(2) of the Judicial Code sets forth 16 non-exhaustive matters that are considered core proceedings.  In addition, the Second Circuit "has construed the core jurisdiction of the bankruptcy courts 'as broadly as possible,' because wide bankruptcy jurisdiction is

---

[2] For purposes of this response, the Plaintiffs will assume that the abstention motion was "timely."

'essential to the efficient administration of bankruptcy proceedings.'"  Id.; Winstar Holdings, LLC v. The Blackstone Group, L.P., No. 07 Civ. 4634 (GEL), 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007).

Courts will also consider a dispute to be a core proceeding "by virtue of [its] nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, . . . or (2) the proceedings directly affect a core bankruptcy function."  Petrie, 304 F.3d at 229. "A proceeding is considered to be at the core of the bankruptcy 'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by nature, could arise only in the context of a bankruptcy case.'"  In re Keene Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995) (quoting In re McCrory Corp., 160 B.R. 502, 506 (S.D.N.Y. 1993)); In re Thomas Van Riper, Inc., No. 97 CV 5332 (SJ), 1999 WL 184111, at *2 (E.D.N.Y. Mar. 23, 1999) (same).

Here, this case is a core proceeding for two reasons.  First, this case "arises in" the Debtors' Chapter 11 Cases.  Second, this case is "core" because it is a "matter concerning the administration of the estate" under 28 U.S.C. § 157(b)(2)(A).

### 1.  This Case Is A Core Proceeding "Arising In" A Chapter 11 Case

This case is a "core proceeding" because it "arises in" a chapter 11 case.  "Arising in" proceedings are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  Winstar, 2007 WL 4323003, at *3 (quoting In re Wood, 825 F.2d 90, 96-97 (5th Cir. 1987)).  Said another way, "[a] claim 'arises in' bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy action, because it has no existence outside of bankruptcy."  Winstar, 2007 WL 4323003, at *3 (quoting In re Sterling Optical Corp., 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003)); see also Thomas Van Riper, 1999 WL 184111, at *3 (holding that post-petition action for declaratory judgment in relation to the approval of a Bankruptcy Rule 9019 motion "arises in" a bankruptcy proceeding,

because the issue was first raised after the filing of the chapter 7 petition, and thus, "would have no existence outside of bankruptcy").

A matter is deemed to "arise in" a chapter 11 case if it involves "the enforcement or construction of a bankruptcy court order." Sterling Optical, 302 B.R. at 801; Winstar, 2007 WL 4323003, at *3 (quoting Sterling Optical). In In re Cedar Chemical Corp., the purchaser of a debtor's membership on a task force sued to compel the other members of the task force to accept it as a member. 294 B.R. 224, 225 (Bankr. S.D.N.Y. 2003). In doing so, the purchaser relied on the terms of an asset purchase agreement with the debtor which was approved in connection with the bankruptcy court's order approving the sale. See id. at 228. The defendants argued that the bankruptcy court lacked jurisdiction to hear the dispute between non-debtors. Id. The court disagreed, holding that it had "core jurisdiction" over the case even though "this contract dispute is between nondebtors, and the outcome will not affect the estate." Id. at 229. The court held that the case was a "core proceeding" because "the preliminary question before the Court involves the interpretation of a post-petition contract and the Court's own order approving the transaction." Id. The Cedar court also noted that the case implicated "the Court's core function of conducting and approving asset sales." Id.; see also Sterling Optical, 302 B.R. at 807 (holding that dispute between non-debtors over terms of post-petition contract and sale order was a "core proceeding").

Similarly, in Winstar, the purchaser of the debtor's assets sued the debtor's former advisors for alleged misrepresentations and other matters. Winstar, 2007 WL 4323003, at *1. The Court held that a clause in the sale order retaining the Bankruptcy Court's jurisdiction to "resolve any disputes arising under or related to" the order was sufficient to confer "arising in" jurisdiction over the action between non-debtors. Id. at *5; see also Norkin v. DLA Piper

14

Rudnick Gray Cary, LLP, No. 05 Civ. 9137(DLC), 2006 WL 839079, at *3 (S.D.N.Y. Mar. 31, 2006) ("The bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under [28 U.S.C.] § 157(b)(2)(A).") (quoting In re United States Lines, 197 F.3d 631, 637-38 (2d Cir. 1999)); Gentry v. Gentry, 207 B.R. 146, 149 (E.D. Ky. 1999) (holding that a debtor's post-petition attack on a settlement agreement between the debtor, the chapter 11 trustee, and the debtor's creditors was a core proceeding) (citing In re Ben Cooper, Inc., 896 F.2d 1394 (2d Cir. 1990)).

Here, this case "arises in" a chapter 11 case for several reasons. First, just as in Cedar Chemical, Sterling Optical and Winstar, the Plaintiffs' claims involve the construction and enforcement of the Bankruptcy Court's Settlement Order. Second, the interpretation of the Settlement Order—which settled a billion dollar claim dispute—implicates the Bankruptcy Court's core function of allowing and disallowing claims against the Debtors' estates. See 28 U.S.C. § 157(b)(2)(B).

Third, the Bankruptcy Court expressly retained jurisdiction to enforce the terms of the Settlement Order. Fourth, the dispute between the parties arises out of the Settlement Agreement—a post-petition contract resolving a claim dispute—and "would have no existence outside of the bankruptcy." Thomas Van Riper, 1999 WL 184111, at *3.

In summarily concluding that the matters raised in the Plaintiffs' Complaint were "non-core" state law claims, the Bankruptcy Court failed to address any of the authority cited above. Indeed, the Bankruptcy Court's abstention review appears to have started and ended with the flawed premise that the Court should focus solely on the Appellees' state law claims rather than on the Plaintiffs' claims, which involve the construction of a federal court order and therefore inevitably "arise in" the Debtors' Chapter 11 Cases. The correct order of decision-making in a

15

case like this is to determine first, whether the Settlement Order can be belatedly attacked under principles of finality, and then, if the answer is yes, to determine whether the Bankruptcy Court should abstain from such adjudication. The Bankruptcy Court appears to have gotten it backwards (and if it impliedly decided it in the correct order without saying so, then it did so incorrectly). This case therefore is a core proceeding that is not susceptible to mandatory abstention under 28 U.S.C. § 1334(c)(2). The Abstention Order should be reversed.

### 2. This Case Is A "Core Proceeding" Because It Is A "Matter Concerning The Administration Of The Estate"

This case is also a "core proceeding" because it is a "matter concerning the administration of the estate" under 28 U.S.C. § 157(b)(2)(A). "The reach of bankruptcy jurisdiction encompasses all matters the outcome of which could affect the debtor or its reorganization." In re Ionosphere Clubs, Inc., 111 B.R. 423, 431 (Bankr. S.D.N.Y. 1990) (quoting In re Chateaugay Corp., 109 B.R. 613, 621 (S.D.N.Y. 1990)).

For example, it has been held that the bankruptcy court has "core" jurisdiction under § 157(b)(2)(A) to issue an injunction in a dispute between non-debtors if such dispute could conceivably impact the Debtors' estates. See Norkin, 2006 WL 839079, at *4 (dispute was a "core proceeding" as it "directly affect[ed] the potential recoveries of creditors in the bankruptcy proceedings"); see also LTV Corp. v. Back, 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996) (The Bankruptcy Court "has the power to enjoin the Appellees from proceeding against non-debtor third parties . . . where, as here, the actions against such third parties have at least a conceivable effect upon the Debtors . . . .") (emphasis added); In re Steffan, 97 B.R. 741, 748 (Bankr. N.D.N.Y. 1989) (even a "colorable claim" against a trust established in a chapter 7 estate warrants "an injunction pursuant to Code § 105(a) . . . in order for the Court to 'preserve its ability to make the necessary inquiry' with regard to property of the estate so that it can

administer the liquidation of the bankruptcy estate and safeguard the equality of any possible distribution to creditors in accordance with Title 11").

Courts have also routinely held that actions to implement or enforce bankruptcy court orders are "matters concerning the administration of the estate" under § 157(b)(2)(A). See In the Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 6 F.3d 1184, 1194 (7th Cir. 1993) (where the court held that it was reversible error for the bankruptcy court to abstain from interpreting and enforcing its own order); In re TL Adm. Corp., 337 B.R. 827, 829 (Bankr. S.D.N.Y. 2006) (holding that the Bankruptcy Court had "core" jurisdiction under 28 U.S.C. § 157(b)(2)(A) and (O) because the dispute pertained to the interpretation and implementation of an agreement approved by the court); In re Prudential Lines, Inc., 170 B.R. 222, 230 (S.D.N.Y. 1994) (enforcement of "so ordered" stipulation and plan constituted core proceeding under 28 U.S.C. § 157(b)(2)(A)); Comco Assocs. v. Faraldi Food Indus., Ltd., 170 B.R. 765, 772 (E.D.N.Y. 1994) (holding that dispute between non-debtors was "inextricably linked" to bankruptcy court approved sale and therefore constituted a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O)).

For example, in Chicago, the Seventh Circuit held that it was reversible error for the bankruptcy court[3] to abstain from interpreting and enforcing the terms of its own consummation order.  6 F.3d at 1194.  In Chicago, the plaintiff brought an action in state court against the debtor after the bankruptcy court had already entered an order discharging the debtor from any and all claims, including any contingent claims, that existed at the time of consummation.  The

---

[3] In Chicago, the debtor reorganized under section 77 of the Bankruptcy Act of 1989 (formerly 11 U.S.C. § 205), and therefore, the United States District Court for the Northern District of Illinois presided over the reorganization.  6 F.3d at 1186.  For discussion purposes, the District Court will be referred to as a "bankruptcy court."

bankruptcy court's order specifically retained jurisdiction to consider any claims or contingent claims against the debtor. In light of this express retention of jurisdiction, the debtor sought an injunction from the bankruptcy court against the state court action, but the bankruptcy court abstained. The Court held that the bankruptcy court's decision to abstain constituted reversible error. The Court stated that:

> Abstention is but a narrow exception to the exercise of federal jurisdiction, and the reorganization court should not abstain from interpreting its own consummation order absent extraordinary circumstances. The reorganization court is clearly in the best position both to interpret the consummation order . . . and to determine whether MT had a contingent claim that should have been filed in the reorganization.

Id. at 1194.

Just as in Chicago, as well as in TL, Prudential and Comco, the Bankruptcy Court has jurisdiction under 28 U.S.C. § 157(b)(2)(A) to implement and enforce the Settlement Order against the Appellees' improper collateral attack. As the court noted in Chicago, the Bankruptcy Court is "clearly in the best position both to interpret" the Settlement Order, and to determine whether the Appellees waived or otherwise forfeited their claims against the Plaintiffs by failing to raise them during any one of the opportunities afforded to them under the notice and hearing process of Bankruptcy Rule 9019.

### B. The Appellees Cannot Establish Four Of The Remaining Elements Required For Mandatory Abstention

Mandatory abstention would not apply to this case even if it were a non-core proceeding (which it is not). The Appellees must establish all six elements under 28 U.S.C. § 1334(c)(2) for mandatory abstention to apply. See In re AHT Corp., 265 B.R. 379, 383 (Bankr. S.D.N.Y. 2001) ("It is clear from the statute itself that all six must be found for abstention to be mandatory."). They cannot do so.

**1.    This Proceeding Does Not Arise Under State Law**

In order for mandatory abstention to apply, the Adversary Proceeding must arise under state law.  It does not.

Here, the Plaintiffs' claims for <u>res judicata</u>, estoppel and waiver each relate to the interpretation, enforcement and finality of the Settlement Order entered by the Bankruptcy Court. These are all exclusively matters of federal bankruptcy law, not state law.  <u>See</u>, <u>e.g.</u>, <u>In re Colarusso</u>, 382 F.3d 51, 57 (1st Cir. 2004) ("The scope of the bankruptcy court's sale order under the Code is an issue of federal law that weighs against abstention.") (internal quotation omitted); <u>In re Si Yeon Park, Ltd.</u>, 198 B.R. 956, 963 (Bankr. C.D. Cal. 1996) ("Interpreting the scope and effect of bankruptcy court orders modifying the automatic stay in a pending bankruptcy case raises primarily issues of federal law, not state law."); <u>see also</u> <u>In re U.S.H. Corp. of New York</u>, 280 B.R. 330, 338 (Bankr. S.D.N.Y. 2002) ("[T]he policy of this district does not favor abstention in matters involving a court's interpretation of its own orders.").

In holding that the claims at issue in this case were merely "state law claims," the Bankruptcy Court ignored the Settlement Order and the authority cited above and focused solely on the Counterclaim and the State Court Action.  However, the Appellees' assertion of alleged "state law" claims in their Counterclaim and the State Court Action does not satisfy this element. None of these so-called "state law" claims impact the Plaintiffs' right to the relief they have requested under federal law pursuant to the terms of the Settlement Order.  <u>See</u> <u>U.S.H. Corp.</u>, 280 B.R. at 338 ("Because [the Bankruptcy] Court can decide as a matter of federal bankruptcy law whether the State Court Action violates the Confirmation Order and sections 1141 and 524 of the Bankruptcy Code, without the need to decide any issue of state law, there is no reason for [the Bankruptcy] Court to abstain from ruling."); <u>In re RNI Wind Down Corp.</u>, 348 B.R. 286,

296-97 (Bankr. D. Del. 2006) (holding that existence of alleged state law claims did not satisfy this element because the bankruptcy proceeding did not "change or determine any of the legal issues" that were involved in the state law case).

Although the Appellees have attempted to blur the issues, the relevant question is <u>not</u> whether the Appellees can state a claim under Mississippi law; rather, the relevant inquiry is whether the Settlement Order is a final and binding order that forecloses the Appellees from any subsequent collateral attack <u>under any law</u>. The court in <u>Chicago</u> immediately saw through a similar ruse attempted by the claimant in that case, stating, "we see no state law issue for the reorganization court to decide. The relevant question is not when MT's claim arose as a matter of Minnesota law, but rather, whether Minnesota Transfer had a contingent claim as a matter of <u>federal bankruptcy law</u> prior to the bar date." 6 F.3d at 1190 (emphasis added). As was the case in <u>Chicago</u>, there are no state law issues for the Bankruptcy Court to decide. Rather, the Bankruptcy Court must decide, as a matter of federal law, whether its own Settlement Order, by its terms, precludes the Appellees from pursuing their claims against the Plaintiffs.

This proceeding does not arise under state law. Mandatory abstention is therefore inapplicable. The Abstention Order should be reversed.

### 2.    Section 1334 Of The Judicial Code Is Not The Only Source Of The Bankruptcy Court's Jurisdiction Over This Case

Mandatory abstention also does not apply because 28 U.S.C. § 1334 is not the only source of the Bankruptcy Court's jurisdiction over this case. In the Settlement Order, the Bankruptcy Court retained jurisdiction "to the extent necessary to enforce and resolve any disputes arising over the consummation of the [Settlement] Agreement . . . ." (APP82.).

It is well-settled that bankruptcy courts have jurisdiction to interpret and enforce their own orders. <u>In re Fibermark</u>, 369 B.R. 761, 765 (Bankr. D. Vt. 2007); <u>LTV Corp.</u>, 201 B.R. at

20

62 ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334"); see also Gentry, 207 B.R. at 150 ("There can be no claim of unfair surprise by the parties with respect to proceedings before the bankruptcy court," since the settlement order in dispute made it "clear that, even after the dismissal of the bankruptcy case, the bankruptcy court would have continuing jurisdiction over disputes" related to the settlement agreement); Sterling Optical, 302 B.R. at 801 (stating that the Bankruptcy Court had "core" jurisdiction over dispute involving "the enforcement or construction of a bankruptcy court order"). Consequently, the Bankruptcy Court erred in finding that 28 U.S.C. § 1334 was the only source of its jurisdiction over the Plaintiffs' Complaint. (APP693-APP694.)

Indeed, the Bankruptcy Court's retention of jurisdiction clause alone eliminates any basis for abstention. McClelland v. Grubb & Ellis Consulting Servs. Co., 377 B.R. 446, 455 (Bankr. S.D.N.Y. 2007) (holding that Bankruptcy Court's retention of jurisdiction in the confirmation order was sufficient to render the post-confirmation dispute a core proceeding, unsusceptible to mandatory abstention). In addition, in an analogous case involving an order entered by the United States District Court, the court held that its express retention of jurisdiction to enforce its consent order settling a lawsuit gave it exclusive jurisdiction to effectuate such order. Am. Booksellers Assoc., Inc. v. Houghton Mifflin Co., Inc., No. 94 Civ. 8566 (JFK), 1998 WL 436364, at *3 (S.D.N.Y. July 28, 1998); see also Figures v. Bd. of Pub. Utils. of City of Kansas City, Kan., 967 F.2d 357, 361 (10th Cir. 1992) (holding that an action to enforce a consent decree could only be brought in the original case invoking the court's continuing jurisdiction); cf. In re McMahon Books, Inc., 173 B.R. 868, 875 (Bankr. D. Del. 1994) (Bankruptcy Court refused to exercise jurisdiction over an action where the claim was based upon rights arising out of a

21

settlement agreement reached in a District Court case and the District Court had retained jurisdiction over the enforcement of the settlement agreement).

Here, Section 1334 of the Judicial Code is not the only source of the Bankruptcy Court's jurisdiction over this case. Mandatory abstention is therefore inapplicable. The Abstention Order should be reversed.

### 3. The Appellees Had Not "Commenced" The State Court Action At The Time The Plaintiffs Filed This Adversary Proceeding

Mandatory abstention also requires that a state action "is commenced." 28 U.S.C. § 1334(c)(2). The Appellees cannot establish this element because they did not commence the State Court Action until months after the Plaintiffs filed the Adversary Proceeding. (APP479-APP485.)

Although, as the Bankruptcy Court noted, the State Court Action "has been" commenced (APP694), the "vast majority of the jurisprudence" on this factor "holds that if the state court proceeding had not been filed and was not pending when the bankruptcy case was filed, then mandatory abstention does not apply because the proceeding does not meet the 'is commenced' criteria of the statute." In re Consol. Lewis Inv. Corp.-Ltd. P'ship, 78 B.R. 469, 476 (Bankr. M.D. La. 1987); see also In re Container Trans., Inc., 86 B.R. 804, 805 (Bankr. E.D. Pa. 1988) (the presence of a state court proceeding "at the time that a proceeding is initiated in the bankruptcy court" is a requirement under 28 U.S.C. § 1334(c)(2) that is "[c]onsistent with all known authority") (emphasis added).

Here, the Appellees cannot dispute that they had not "commenced" the State Court Action as of the filing of the Adversary Proceeding on September 21, 2007. (APP479-APP485.) In fact, in an "eleventh hour" attempt to manufacture an abstention argument, the Appellees filed the State Court Action on December 20, 2007, less than 24 hours before they filed the Abstention

Motion.  (Id.) Moreover, to ensure that the Plaintiffs could not make reference to this jurisdictional attack in the Summary Judgment Motion, the Appellees did not even serve the Plaintiffs with their complaint in the State Court Action until January 3, 2008.

The Appellees' belated and transparent attempt to thwart the Bankruptcy Court's jurisdiction to enforce its own order does not satisfy the "is commenced" element of mandatory abstention.  See In the Matter of Rimsat, Ltd., 98 F.3d 956, 962 (7th Cir. 1996) (holding that section 1334 "clearly . . . does not require the bankruptcy court to abstain on the basis of a proceeding instituted after, and in an effort to defeat, the bankruptcy proceeding—strategic conduct that is not to be encouraged").  The Bankruptcy Court failed to address any of this authority or otherwise support its finding that the Appellees had met the "is commenced" element of mandatory abstention.  Mandatory abstention does not apply to this case.

### 4.    This Proceeding Cannot Be "Timely Adjudicated" In State Court

The final element required for mandatory abstention is that the state court can "timely adjudicate" the proceeding.  The Appellees have not satisfied this element.

"More than a 'naked assertion' is needed to prove that this proceeding can be timely adjudicated in a state court."  In re Ames Dep't Stores, Inc., No. 01-8153 (AJG), 2006 WL 1288586, at *12 (Bankr. S.D.N.Y. Apr. 19, 2006) (quoting In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 331 (S.D.N.Y. 2003)).  "Bankruptcy Courts have evaluated their ability to resolve a proceeding faster than another court as a factor weighing against mandatory abstention when considering the 'timely adjudication' factor."  Ames, 2006 WL 1288586, at *12; AHT Corp., 265 B.R. at 388 ("The requirement of timely adjudication necessarily entails a comparison of the time required for litigation in the State Court Action as compared with the litigation schedule in [the Bankruptcy] Court.").

23

Here, the Appellees have provided no evidence that this proceeding can be timely adjudicated in state court, relying on only a "naked assertion" in support of this element. Indeed, all available evidence suggests that the Bankruptcy Court can resolve this proceeding much faster than a state court. The Plaintiffs brought their action nearly ten months ago, and briefing on the Summary Judgment Motion--a motion that the Plaintiffs submit will be dispositive of the entire dispute--has been completed. Conversely, in the State Court Action, no dispositive motions have been submitted. Despite the lack of evidence supporting the Appellees' position, the Bankruptcy Court found that they had satisfied the "timely adjudicated" element.

Moreover, unlike the state court, the Bankruptcy Court is intimately familiar with all of the facts leading up to the Settlement Agreement, the subsequent hearing on the 9019 Motion, and the Settlement Order. As such, the Bankruptcy Court will no doubt be in a position to adjudicate this matter in a far more timely manner than the state court. Mandatory abstention should be denied.

## III.    DISCRETIONARY ABSTENTION IS NOT WARRANTED IN THIS DISPUTE

The Bankruptcy Court erroneously concluded that discretionary abstention under 28 U.S.C. § 1334(c)(1) was appropriate in this case.[4] This improper conclusion constitutes an abuse of discretion, meriting reversal.

---

[4] 28 U.S.C. § 1334(c)(1) provides: "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

NYC_265266.1

**A.**    **Courts Should Exercise Their Discretion To Abstain Sparingly**

Courts in this district apply a presumption against exercising permissive abstention.  See Rahl v. Bande, 316 B.R. 127, 135 (S.D.N.Y. 2004) ("Because district courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' there is a presumption in favor of the exercise of federal jurisdiction and against abstention.") (emphasis added) (internal citations omitted).  "Federal courts . . . must be 'sparing' in their exercise of discretionary abstention." Private Actions Tr. v. Bennett, No. 07 Civ. 8165(GL), 2008 WL 1990669, at *8 (S.D.N.Y. May 7, 2008); Winstar, 2007 WL 4323003, at *5.

Courts commonly consider twelve factors in determining whether permissive abstention is appropriate:

> (a)    The effect upon the efficient administration of the bankruptcy estate;
>
> (b)    The extent to which state law issues predominate;
>
> (c)    The difficult or unsettled nature of the state law issues;
>
> (d)    The commencement of a state law proceeding;
>
> (e)    The jurisdictional bases independent of § 1334;
>
> (f)    The degree of relatedness to the bankruptcy case;
>
> (g)    Whether the proceeding is a "core" proceeding;
>
> (h)    The feasibility of severing the state claims;
>
> (i)    The burden on the court's docket;
>
> (j)    Forum shopping;
>
> (k)    The right to jury trial; and
>
> (l)    The presence of nondebtor parties.

In re Cody, Inc., 281 B.R. 182, 190-91 (S.D.N.Y. 2002); In re Balco Equities Ltd., Inc., 323 B.R.

85, 92-93 (Bankr. S.D.N.Y. 2005).  In this case, an analysis of all twelve of these factors weighs

strongly against abstention.

> **B.    An Analysis Of The Twelve Factors Courts Consider Upon A Request For Discretionary Abstention Weighs Strongly Against Abstention**
>
>> **1.    This Dispute May Have An Impact Upon The Administration Of The Debtors' Estates**

The first factor the Bankruptcy Court must consider is the impact of the dispute on the

administration of the Debtors' estates.  The Bankruptcy Court held that the resolution of this

dispute will have no impact upon the Debtors or their Chapter 11 Cases.  (R28 at 7.)  Yet, the

Debtors received significant benefits under the Settlement Agreement, including the settlement

of a billion dollar claim for $100 million, as well as releases from the State and the Plaintiffs.

(APP45-APP47.)  The Appellees' attack on the Settlement Order threatens to unravel the entire

settlement, exposing the Debtors' estates to substantial liabilities.  The first factor thus weighs

against abstention.

> **2.    State Law Issues Do Not Predominate Over Bankruptcy Issues**

The second factor the Bankruptcy Court must consider is whether the state law issues

predominate over the bankruptcy law issues.  They do not.

As discussed above (see supra § II.B.1), the Bankruptcy Court erroneously considered

only the Appellees' claims in finding that state law issues predominated over bankruptcy law

issues.  The Plaintiffs' claims, which should have been the focus of the Bankruptcy Court's

analysis, each relate to the interpretation, enforcement and finality of the Settlement Order

entered by the Bankruptcy Court.  The interpretation and enforcement of a Bankruptcy Court's

order is a matter of federal law, not state law.  See, e.g., Colarusso, 382 F.3d at 57 ("The scope of

the bankruptcy court's sale order under the Code is an issue of federal law that weighs against

abstention.") (internal quotation omitted); <u>Si Yeon Park</u>, 198 B.R. at 963 ("Interpreting the scope and effect of bankruptcy court orders modifying the automatic stay in a pending bankruptcy case raises primarily issues of federal law, not state law."); <u>see also</u> <u>U.S.H. Corp.</u>, 280 B.R. at 338 ("[T]he policy of this district does not favor abstention in matters involving a court's interpretation of its own orders.").

Moreover, the Bankruptcy Court may rule upon the Summary Judgment Motion and dispose of all issues in this case without analyzing the merits of the alleged "state law claims" raised in the counterclaim and the State Court Action. Any alleged state law issues are therefore irrelevant to this case. <u>See</u> <u>Chicago</u>, 6. F.3d at 1191 (where the court held that it was an abuse of discretion for the reorganizing court to abstain when it could resolve the issue "without deciding any issue of state law"); <u>U.S.H. Corp.</u>, 280 B.R. at 338 ("Because [the Bankruptcy] Court can decide as a matter of federal bankruptcy law whether the State Court Action violates the Confirmation Order and sections 1141 and 524 of the Bankruptcy Code, without the need to decide any issue of state law, there is no reason for [the Bankruptcy] Court to abstain from ruling."); <u>RNI</u>, 348 B.R. at 296-97 (holding that existence of alleged state law claims did not satisfy this element because the bankruptcy proceeding did not "change or determine any of the legal issues" that were involved in the state law case). Therefore, this factor also weighs against abstention and the Bankruptcy Court's decision to abstain constitutes an abuse of discretion.

### 3. The Applicable State Law Is Neither Difficult Nor Unsettled

The Court must also consider whether the applicable state law is difficult to apply or unsettled. As stated above and despite the Bankruptcy Court's erroneous statements to the contrary, the Appellees' alleged "state law claims" are irrelevant to this proceeding. In addition, to the extent that the interpretation or enforcement of the Settlement Order involves state law principles of <u>res judicata</u>, estoppel or waiver, they are all "well settled" areas of law. Even the

27

Bankruptcy Court conceded that that the state law issues "may not be complex." (APP694.) If a state law issue is not unsettled, the "bankruptcy court is qualified to resolve the issue and there is no need to refer it to a state court." Chicago, 6 F.3d at 1189 n.8 (emphasis added); see also Norkin, 2006 WL 839079, at *5. Indeed, the "bankruptcy judges in this district, and the district judges here, address matters of state law on a regular basis . . ." In re River Ctr. Holdings, LLC, 288 B.R. 59, 70 (Bankr. S.D.N.Y. 2003). Consequently, this factor also weighs against abstention and the Bankruptcy Court's decision to abstain is an abuse of discretion.

### 4. The Appellees Had Not Commenced The State Court Action When This Case Was Initiated

The next factor courts consider is whether an action had been commenced in another court when the bankruptcy proceeding was initiated. Here, the reasoning applied by courts considering mandatory abstention applies with equal force with respect to discretionary abstention: this factor only weighs in favor of abstention if the state court proceeding was commenced before the bankruptcy court proceeding. Consol. Lewis Inv., 78 B.R. at 476; Container Trans., Inc., 86 B.R. at 805.

Here, the Appellees did not commence the State Court Action until three months after the Plaintiffs filed the Adversary Proceeding. (APP479-APP485.) The Appellees' transparent attempt to "forum shop" and defeat the Bankruptcy Court's jurisdiction to enforce its own order also weighs against abstention.

### 5. The Settlement Order Provides An Independent Basis For Jurisdiction

The fifth factor is whether the Bankruptcy Court can assert jurisdiction over this dispute without resort to 28 U.S.C. § 1334. As discussed in detail above (see supra § II.B.2), the Bankruptcy Court failed to account for the fact that it has jurisdiction to enforce the Settlement

28

Order under its retention of jurisdiction clause and principles of applicable law.  This factor thus also weighs against abstention.

> ### 6.    This Case Bears A Direct Relationship To The Bankruptcy Proceeding

The sixth factor considered upon a request for discretionary abstention is the degree of relatedness or remoteness of the proceeding to the main bankruptcy case.  Although the Bankruptcy Court held that the issues raised in this dispute are "remote from" the bankruptcy case (APP694), this conclusion ignores the fact that this dispute is premised upon the Plaintiffs' action to enforce the Settlement Order, which resolved a billion dollar claim dispute in the main bankruptcy case.  RNI, 348 B.R. at 297 ("Consideration of [a] . . . Settlement through the 9019 Motion is a core proceeding and therefore related to the main bankruptcy case.").

In addition, any successful attack on the Settlement Order will necessarily impact the Debtors' rights and obligations under the Settlement Agreement, which would have a "domino effect on other creditors."  In re River Ctr. Holdings, LLC, 288 B.R. at 71 (where the court held that this factor weighed against remanding the matter back to state court, since the Appellee could assert an indemnity claim against the debtors in an action brought against him by a third party).  As such, this factor also weighs against abstention.

> ### 7.    The Substance Of This Action Is A Core Proceeding

The seventh factor is whether the matter is a "core proceeding."  For the reasons stated above (see supra § II.A), this matter is a "core proceeding."

> ### 8.    It Is Not Feasible Or Appropriate To Sever The State Law Claims

The eighth factor is whether it would be feasible to sever the state law claims from the core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the Bankruptcy Court.  The Bankruptcy Court does not appear to have considered this factor.

Here, not only is severing alleged state law claims not feasible, it is not appropriate. As set forth in the Summary Judgment Motion, each of the Appellees' alleged state law claims is barred by principles of <u>res judicata</u>, estoppel and waiver pursuant to the terms of the Settlement Order. The Bankruptcy Court's determination of the Summary Judgment Motion on those issues would, in the Plaintiffs' view, dispose of any state law claims.

### 9. The Burden On The Bankruptcy Court's Docket Is Outweighed By Considerations Of Judicial Economy

The ninth factor is the burden on the Bankruptcy Court's docket. The Bankruptcy Court does not indicate that it considered this factor. While the Bankruptcy Court's docket is undoubtedly busy, this matter could have been swiftly disposed of through a Summary Judgment Motion that was completely briefed when the Court decided to abstain. In addition, it would clearly amount to a waste of judicial resources to begin briefing anew in front of a state court that has no familiarity with the Debtors, the Settlement Agreement, the Settlement Order, Bankruptcy Rule 9019 motions or the interpretation or enforcement of Bankruptcy Court orders. Accordingly, this factor also weighs against abstention.

### 10. The Plaintiffs' Filing Of This Case In Bankruptcy Court Was Not Motivated By Forum Shopping

The tenth factor the Bankruptcy Court should have considered is whether the Plaintiffs' initiation of this proceeding in Bankruptcy Court was motivated by forum shopping. The Bankruptcy Court offers no finding on this factor. Here, the Plaintiffs had no <u>choice</u> but to file their claims in the Bankruptcy Court and, therefore, were not in any way motivated by forum shopping. It was the Bankruptcy Court that entered the Settlement Order, and it was the Bankruptcy Court which retained jurisdiction to enforce its terms. (APP81-APP82.)

If anything, as discussed above, the fact that the Appellees waited until one day before they filed their Abstention Motion to "commence" an action in state court solely to thwart the

Bankruptcy Court's jurisdiction suggests that the Appellees were motivated by "forum shopping." See Williams v. Citifinancial Mtg. Co. (In re Williams), 256 B.R. 885, (B.A.P. 8th Cir. 2001) (where the court held that it was reversible error for the bankruptcy to abstain, in light of the "likelihood that [the claimant's] commencement of the state court suit was an attempt to shop for a forum that would find some basis for [it] to retain funds that the Bankruptcy Appellate Panel of the Eighth Circuit had already determined should be returned"). This factor also weighs against abstention.

### 11.    The Appellees Have Not Requested A Jury Trial

The eleventh factor to the Bankruptcy Court should have considered is the right to a jury trial. The Bankruptcy Court does not appear to have considered this factor. The Appellees have not requested a jury trial in state court. In addition, the Plaintiffs' claims are purely legal issues that can be disposed of through the Summary Judgment Motion. This factor therefore weighs against abstention.

### 12.    While The Debtors Are Not Parties To This Dispute, They Were Parties To The Settlement Agreement

The final factor is the presence of non-debtor parties. While it is true, as the Bankruptcy Court notes, that all of the parties are non-debtors, it is also equally true that the Settlement Order and Settlement Agreement involved the Debtors (APP37) and, therefore, the ultimate resolution of this dispute will inevitably impact the Debtors and their estates. As such, this factor also weighs against abstention.

Because all of the relevant factors weigh against abstention, the Bankruptcy Court should not have abstained from this dispute. The Bankruptcy Court therefore abused its discretion in doing so and its decision should be reversed. See In re DeLorean Motor Co., 155 B.R. 521, 524 (9th Cir. 1993) (Bankruptcy Court abused its discretion when it granted discretionary abstention

31

under 28 U.S.C. 1334(c)(1) where court incorrectly determined that dispute was not core proceeding and that outcome would not impact administration of the debtor's estate); <u>In the Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.</u>, 6 F.3d 1184, 1194 (7th Cir. 1993) (the reorganization court abused its discretion when it granted discretionary abstention under 28 U.S.C. 1334(c)(1) where court incorrectly determined that plaintiff was engaged in forum shopping, that abstention would serve judicial economy, and that a significant question of state law was invovled).

## IV.    THE BANKRUPTCY COURT'S ABSTENTION ORDER AND OPINION ARE INADEQUATE

In addition to being unsupported by any facts in the record, the Abstention Order and the Bankruptcy Court Opinion do not provide an adequate description of the Bankruptcy Court's own analysis, reasoning or explanation for its ultimate conclusions.  An order that "merely adopt[s]" the "reasoning set forth in" the Appellees' memorandum is "inadequate." <u>Chicago</u>, 6 F.3d at 1188.  As one court has explained, a "judge could not photocopy a lawyer's brief and issue it as an opinion. Briefs are argumentative, partisan submissions. Judges should evaluate briefs and produce a neutral conclusion, not repeat an advocate's oratory." <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 626 (7th Cir. 1990).  The <u>DiLeo</u> court further observed that such an opinion is particularly troubling in that "it withholds information about what arguments, in particular, the court found persuasive, and why it rejected contrary views." <u>Id.</u>

Here, the Abstention Order and Bankruptcy Court Opinion provide insufficient analysis or an independent "neutral conclusion" regarding the issues raised by the Abstention Motion. Rather, it only contains a brief summary of certain points and arguments made in the Appellees' Abstention Motion and supporting brief.  There is inadequate discussion of which arguments the Bankruptcy Court found persuasive, or why it rejected contrary views.  The Abstention Order

32

and Bankruptcy Court Opinion also contain minimal discussion of the numerous cases cited to by both parties in support of their respective positions including on, among other things, the important issues of "core" jurisdiction and whether the claims at issue were "state law claims."

Normally under such circumstances, remand to the Bankruptcy Court for further proceedings on the Abstention Motion would be appropriate. <u>Id.</u> However, because the Bankruptcy Court clearly committed reversible error in granting the Abstention Motion (for the reasons stated herein), the Plaintiffs request that the Court simply reverse the Abstention Order and remand the matter back to the Bankruptcy Court so that it may issue a ruling as to the pending Summary Judgment Motion. In the alternative, the Plaintiffs request that this Court remand the matter back to the Bankruptcy Court for further proceedings on the Abstention Motion.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For the reasons stated above, the Plaintiffs, The Langston Law Firm, PA, Joseph C. Langston, and Timothy R. Balducci respectfully request that this Court enter an Order (a) reversing the Abstention Order and remanding the matter back to the Bankruptcy Court so that it may rule upon the pending Summary Judgment Motion, or in the alternative, (b) remanding the matter back to the Bankruptcy Court for further proceedings on the Abstention Motion.

Dated: June 13, 2008                        Respectfully submitted,

                                            By:___/s/ Robert A. Scher_____
                                                Robert A. Scher
                                                Michael P. Richman
                                                FOLEY & LARDNER LLP
                                                90 Park Avenue
                                                New York, NY 10016
                                                Phone:  (212) 682-7474
                                                Fax:  (212) 682-2329
                                                email:  rscher@foley.com

                                                -and-

                                                Geoffrey Goodman (*admitted via pro hac vice*)
                                                Joanne Lee (*admitted via pro hac vice*)
                                                FOLEY & LARDNER LLP
                                                321 N. Clark Street, Suite 2800
                                                Chicago, IL 60610
                                                Phone:  (312) 832-4500
                                                Fax:  (312) 832-4700

                                                *Attorneys for Plaintiffs The Langston Law Firm,*
                                                *PA, Joseph C. Langston and Timothy R.*
                                                *Balducci*

NYC_265266.1