Arthur F. Jernigan, Esq. (MSB No. 3092)
Craig M. Geno, Esq. (MSB No. 4793)
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
Telephone: (601) 427-0048
Facsimile: (601) 427-0050

Andrew M. Kramer, Esq. (AK 4438)
Andrew S. Halpern, Esq. (AH 7905)
OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, NY 10169-0075
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Attorneys for Appellees Stacey Pickering in his capacity
as Auditor for the State of Mississippi and Phil Bryant
in his capacity as former Auditor for the State of Mississippi*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | (Jointly Administered) |
| WORLDCOM, INC., et al., | ) | Bankruptcy Court Case No. |
| | ) | 02-13533 (AJG) |
| Debtors. | ) | |
| | ) | |
| | ) | |
| THE LANGSTON LAW FIRM, PA, JOSEPH C. | ) | 08 Civ. 04331 |
| LANGSTON, and TIMOTHY R. BALDUCCI, | ) | |
| | ) | Bankruptcy Court |
| Appellants, | ) | Adversary Proceeding |
| | ) | No. 07-02044 (AJG) |
| v. | ) | |
| | ) | |
| THE STATE OF MISSISSIPPI, STACEY PICKERING | ) | |
| in his capacity as Auditor for the State of Mississippi, | ) | **BRIEF OF APPELLEES** |
| and PHIL BRYANT, in his capacity as former Auditor | ) | |
| for the State of Mississippi, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appellees Stacey Pickering, in his capacity as State Auditor for the State of Mississippi, and Phil Bryant, in his capacity as former State Auditor for the State of Mississippi (collectively, the "State Auditor"), submit this Brief in opposition to the appeal by The Langston Law Firm, Joseph C. Langston, and Timothy Balducci (collectively, the "Langston Firm"), from the decision dated April 2, 2008, of the United States Bankruptcy Court for the Southern District of New York granting the State Auditor's abstention motion (the "Decision"). In the Decision, the Bankruptcy Court concluded that (a) all the requirements for mandatory abstention set forth in 28 U.S.C. § 1334 (c)(1) were met, and (b) the factors in favor of permissive abstention set forth in 28 U.S.C. § 1334 (c)(2) weighed heavily in favor of abstention. (APP 000687-95) For the reasons set forth below, that ruling was correct and should be affirmed.

## ISSUES PRESENTED FOR REVIEW

1.    Whether the Bankruptcy Court properly held that mandatory abstention was appropriate where the dispute is between non-debtor parties, is a non-core matter, raises no issues of bankruptcy law, and has no impact on the bankruptcy estate.

2.    Whether the Bankruptcy Court properly exercised its discretion in granting permissive abstention where, among other things, the underlying legal fee dispute is uniquely a matter of Mississippi state law, the application of such law is best considered by the Mississippi state court, and the adjudication of the dispute will not impact the bankruptcy case.

3.    Whether the Bankruptcy Court properly concluded that the doctrines of res judicata, estoppel and waiver did not apply where the issues presented were neither actually nor necessarily decided in the prior proceeding.

## THE APPLICABLE STANDARD OF REVIEW

In addressing the bankruptcy court's determination on the issue of mandatory abstention,

the district court reviews the bankruptcy court's factual findings for "clear error" and its legal conclusions *de novo*. *In re Demert & Dougherty, Inc.*, 2001 U.S. Dist. LEXIS 19848, at *20-21, 47 Collier Bankr. Cas. 2d (MB) 493 (N.D. Ill. 2001).  In applying the clear error standard of review, "the court would have to accept the factual determinations of the bankruptcy court unless they either were completely devoid of minimum evidentiary support displaying some hue of credibility or they bore no rational relationship to the supportive evidentiary data." *Id.* at *20-21.

A decision by the bankruptcy court on the issue of discretionary abstention under 28 U.S.C. § 1334(c)(1) is reviewed for abuse of discretion, which may be found where the bankruptcy court "abused its discretion because it 'based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Cody, Inc. v. Orange County (In re Cody, Inc.)*, 281 B.R. 182, 184-85 (S.D.N.Y. 2002) (citations omitted), *aff'd in part, appeal dismissed in part*, 2003 U.S. App. LEXIS 15524 (2d Cir. 2003), *citing*; *In re Prudential Lines, Inc.*, 170 B.R. 222, 228 (S.D.N.Y. 1994).

## SUMMARY OF ARGUMENT

The Bankruptcy Court properly held that mandatory obstruction was appropriate and properly exercised its discretion in granting permissive abstention with respect to the dispute at issue in this case.  The Bankruptcy Court correctly recognized that this matter involves a dispute between the State Auditor and the Langston Law Firm, both non-debtors, who were not parties to these Chapter 11 proceedings or to the Settlement Agreement dated as of May 6, 2005, between the State and the Debtors (the "Settlement Agreement," APP33-53).  All of the parties to this action are residents of Mississippi, the contract which governs the relationship between the parties was entered into in Mississippi and is based upon state law claims, and the dispute between the parties raises important issues regarding the allocation of Mississippi public funds.

That dispute does not raise any issues of bankruptcy law or implicate any rights under Title 11, and will not have any impact on the administration of the estate, the Debtors' Chapter 11 cases, or the joint plans consummated thereunder. The dispute is best considered by the Mississippi state courts, which have the greatest interest in the matter and in which there is already a pending action regarding the same issues between the parties to this action.

The Bankruptcy Court properly found that all six factors necessary for mandatory abstention pursuant to 28 U.S.C. § 1334 (c)(2) were met because:

(1)    The State Auditor's motion for abstention was timely made.

(2)    The dispute in this matter arises under state law, including, without limitation, Mississippi Code § 7-5-7, which required that the Langston Firm be paid for any legal services it rendered "out of the Attorney General's contingent fund or any other funds appropriated to the Attorney General's office," which did not occur, and Mississippi Code § 7-7-211, which gives the State Auditor the authority and duty to seek recovery of the funds from the Langston Firm.

(3)    This is a non-core proceeding between non-debtor parties from the State of Mississippi that does not "aris[e] in" a bankruptcy case or "aris[e] under" the Bankruptcy Code. As the Bankruptcy Court correctly concluded, this dispute presents no issues of bankruptcy law, and its outcome will have no impact, positive, negative or otherwise, upon the reorganized Debtors' Chapter 11 cases, the administration thereof or the consummation of the joint plans thereunder. Moreover, a parallel state court action is pending in Mississippi involving the same parties, subject matter and claims, and the United States District Court for the Southern District of Mississippi (the "Mississippi District Court") held that the matter should proceed in, and remanded that action back to, the Mississippi state court. In so ruling, the Mississippi District Court, like the Bankruptcy Court, ruled that this is not a case "over which the New York

Bankruptcy Court should preside," concluding that

> [i]f the New York Bankruptcy Court were to exercise adjudicatory jurisdiction as to any of the claims of the State Auditor, this court is persuaded that the dictates of [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L.Ed.2d 598 (1982)], would be violated, especially when the State Auditor's claims implicate no rights and powers of bankruptcy, do not depend upon the bankruptcy laws for their existence, and are claims that could proceed in state court even in the absence of bankruptcy. (State of Mississippi v. Langston Law Firm, P.A., No. 3:08-cv-00061-HTW-LRA, S.D. Miss. June 11, 2008, Docket No. 12, a copy of which is annexed hereto)

    (4)     Federal jurisdiction is based <u>solely</u> on 28 U.S.C. § 1334. There is no independent basis for federal jurisdiction because there is no federal question involved or diversity of citizenship between the two parties, who are all Mississippi residents.

    (5)     The State Auditor commenced an action in Mississippi state court (the "Mississippi Action") for a determination of this dispute under Mississippi law.

    (6)     The Mississippi Action can be timely adjudicated in state court.

The Bankruptcy Court also properly exercised its discretion in concluding that even if mandatory abstention were not established, it would abstain from hearing and determining its adversary proceeding (the "Adversary Proceeding"). In exercising its discretion, the Bankruptcy Court explained:

> Even if mandatory abstention were not warranted, factors supporting permissive abstention weigh in favor of that relief here. There will be no effect on the efficient administration of the estate if the Court recommends abstention. The Debtors' cases are confirmed and their administration is largely complete. The issues between the parties involve state law, rather than bankruptcy law, issues. While state law regarding the payment of legal fees to the Langston Firm may not be complex, the application of such law is best considered by a Mississippi state court. The issues raised in the Adversary Proceeding are remote from and not related to the bankruptcy case. The parties are non-debtors. No claim is raised against the Debtors or implicates property of the estate. Resolution of the dispute does not require an interpretation of the Settlement

Agreement or the Settlement Order and will not impact, in any way, the Debtors or the bankruptcy case.

The Debtors have fully complied with the payment provisions of the Settlement Agreement by making the payments referred to in subparagraphs 8(i)-(iii).   The Debtors' liability to the State is concluded.   The issue of whether those monies are ultimately required to be turned over to the state is not an issue over which this Court has jurisdiction.   The appropriate allocation of such funds pursuant to state law concerns only the State and the Langston Firm.   Resolution of that issue will have no bearing on the settlement of the Debtors' rights and obligations effectuated under the Settlement Agreement.    The factors in favor of permissive abstention weigh heavily in favor of that relief. (APP694-95)

Accordingly, the Bankruptcy Court's decision to abstain from hearing this dispute was based on

a well considered review of the record and should be affirmed.

The Langston Firm asserts that the Bankruptcy Court improperly focused on the State

Auditor's counterclaims under Mississippi law, rather than on the Langston Firm's claims that

those state law claims were barred by res judicata, collateral estoppel and waiver, which the

Langston Firm claims are a matter of federal law -- specifically, to enforce a Bankruptcy Court

Order approving a settlement agreement.  (App. Brief, at 9, 26)  However, that argument ignores

the fact that the Bankruptcy Court (which, according to the Langston Firm, "is 'clearly in the

best position both to interpret' the Settlement Order, and to determine whether the Appellees

waived or otherwise forfeited their claims against the Plaintiffs") concluded that the "Auditor's

pursuit of the $14 million paid to the Langston Firm . . . is not a collateral attack on the

Settlement Order implicating res judicata, estoppel or waiver" because such issues were not

before the Bankruptcy Court when the Settlement Agreement was approved.  (App. Brief, at 18,

APP 000690-91)    Thus, the Bankruptcy Court correctly determined that the only viable issues

presented relate to the State Auditor's state law claims seeking the return of the $14 million paid

to the Langston Firm.  Accordingly, the Decision should be affirmed.

## STATEMENT OF FACTS

On July 21, 2002 (and certain other dates thereafter), WorldCom, Inc. and certain of its related entities (the "Debtors") filed voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code. (Amended Complaint, ¶ 13, APP 000563)  (References in the form of "APP ___" may be found in the Appendix to Appellants' Opening Brief.)  The Bankruptcy Court entered an order on October 31, 2003, confirming the Debtors' modified second amended joint plan of reorganization, which became effective on April 20, 2004. (Amended Complaint, ¶ 14, APP 563)

The Mississippi State Tax Commission (hereafter, the "Commission") filed proofs of claim in the Debtors' bankruptcy cases alleging that Debtors owed it more than $1 billion in taxes, penalties and interest, to which the reorganized Debtors objected. (Amended Complaint, ¶ 15, APP 564-65)  The Attorney General for the State of Mississippi, James M. Hood ("Hood"), retained the Langston Firm, located in Mississippi, to assist him in prosecuting the claims the Commission asserted against the Debtors. (Amended Complaint, ¶ 16, APP 000564)  Hood and the Langston Firm executed a retention agreement stating that the Langston Firm would receive a percentage of any recovery from the Debtors. (Amended Complaint, ¶ 18, APP 564)

On May 6, 2005, the reorganized Debtors and the State entered into the Settlement Agreement in which they settled the proofs of claim filed by the Commission. (APP689)  On May 9, 2005, the reorganized Debtors filed and served a motion for approval of the Settlement Agreement, which motion was noticed to be heard three days later, on May 12, 2005. (APP63-79)  That motion was served on certain parties, but not on the State Auditor. (APP075-79)  By order dated May 13, 2005, the Bankruptcy Court approved the Settlement Agreement. (Amended Complaint, ¶ 29, APP563)

Paragraph 8 of the Settlement Agreement provides, in pertinent part:

8.    Settlement Payment and Releases.  In consideration of the release from the State and the other terms of this Agreement, and in full and complete satisfaction of the Additional Claims, [the Reorganized Debtors] will pay the following amounts and transfer the following property as payments of tax and interest to or on behalf of the State:

(i)    [$100,000,000] to the State;

(ii)    [$14,000,000] in counsel fees and costs to [the Langston Firm], . . . acting as Special Assistant Attorneys General for the State;

(iii)    [$4,200,000] to the Children's Justice Center of Mississippi; and

(iv)    The WorldCom real property described on Exhibit C hereto.

(Settlement Agreement, ¶ 8, APP45)

The Debtors made all of those payments.  (Answer to Amended Complaint, ¶¶ 11-15, APP673)

The State Auditor subsequently made a demand on the Langston Firm for the return of the $14 million paid to it.  (Amended Complaint, ¶ 51, APP573)  It is the State Auditor's contention that, in accordance with Mississippi law, all of the $118.2 million in settlement funds, including the $14 million paid to the Langston Firm, and the $4.2 million paid to the Justice Center, comprise public funds of the State of Mississippi.  The State Auditor contends that it is unlawful for attorneys retained in the manner in which the Langston Firm was retained to be paid with public funds except "out of the Attorney General's contingent fund, or out of any other funds appropriated to the Attorney General's Office." Miss. Code Ann. § 7-5-7.

It is undisputed that the Langston Firm was paid directly by the Debtors, not from the "Attorney General's contingent fund or any other funds appropriated by the Mississippi

legislature." (Amended Complaint, ¶ 26, APP566; Answer to Amended Complaint, ¶ 15, APP 673)  Thus, the State Auditor contends that the Langston Firm must first return the funds to the State of Mississippi for approval and appropriation by the Mississippi legislature.  The State Auditor also made demand on the Justice Center for return of its public funds to the State of Mississippi, and the Justice Center complied with the demand and returned the funds. (Answer to Amended Complaint, ¶¶ 12, 14, APP 673)

The Langston Firm refused to comply with the State Auditor's demand, and on September 21, 2007, it instituted the Adversary Proceeding in the Bankruptcy Court seeking a declaratory judgment that they were entitled to keep the funds. (Complaint, APP1-24)  The complaint includes six claims for relief, seeking declaratory judgment that:  (1) the State Auditor's claims are barred by the doctrines of res judicata, collateral estoppel and waiver; (2) the State Auditor cannot meet the standards under Fed. R. Civ. P. 60 to attack the Settlement Agreement; (3) the Debtors' payment of attorneys' fees directly to the Langston Firm was proper under Mississippi law; (4) the funds paid to the Langston Firm were never property of the State; (5) the Langston Firm is entitled to recover from the State Auditor under the retention agreement between the Langston Firm and the State; and (6) the State Auditor has no authority under Mississippi law to recover attorneys' fees from the Langston Firm. (Complaint, APP1-24)  The State Auditor subsequently served an Answer and Counterclaim denying the material allegations in the Complaint and asserting claims to the $14 million under Mississippi law. (APP189-209)

On December 20, 2007, the State Auditor commenced an action against the Langston Firm in the Circuit Court of Hinds County, Mississippi (the "Mississippi State Court") seeking return of the $14,000,000 (the "Mississippi Action"). (APP 479-85)  On January 30, 2008, the Langston Firm removed the action to the Mississippi District Court. (APP 678)  On February 5,

2008, the Langston Firm filed an answer asserting many of its claims asserted in this Adversary

Proceeding as affirmative defenses, including a "Fourth Defense," alleging that "[s]ome or all of

Plaintiffs' claims are barred by the doctrines of collateral estoppel, res judicata, judicial estoppel,

law of the case and/or waiver." (State of Mississippi v. Langston Law Firm, P.A., No. 3:08-CV-

00061-HTW-LRA, S.D. Miss., Feb. 5, 2008, Docket No. 2)   On February 26, 2008, the State

Auditor filed a Motion to Remand, incorporating many of the arguments in its abstention motion

filed with the Bankruptcy Court.  (APP 678)   On June 11, 2008, the Mississippi District Court

issued a decision remanding that action to the Mississippi State Court (the "Remand Decision").

(State of Mississippi v. Langston Law Firm, P.A., No. 3:08-cv-00061-HTW-LRA, S.D. Miss.

June 11, 2008, Docket No. 12, a copy of which is annexed hereto)   Consistent with the

Bankruptcy Court's Decision, the Remand Decision concluded that the case was not "one over

which the New York Bankruptcy Court should preside," and held:

> The instant case, removed here by defendants (the Langston Firm) from the Circuit Court for the First Judicial District of Hinds County, Mississippi, is not based on any right created by the federal bankruptcy law.  The State Auditor specifically refers to his obligations and duties under state law. Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy.  It is, simply stated, an action to determine the authority of the Attorney General for the State of Mississippi under Mississippi law to enter into contracts with his choice of designated Special Assistant Attorneys General, where said contracts permit these designated Special Assistants to receive attorney fees from successful litigation, as would a private attorney for a non-governmental client, directly from the litigation, and not from funds held by the Attorney General and not pursuant to any action of the Mississippi Legislature.  Thus, were there no action in bankruptcy, this case still could proceed in state court based on issues wholly within the province of state law.

> So, the essential issue in the state court proceeding is whether the defendants are liable under state law to repay the $14 million dollars they received as Special Assistant Attorneys General.  The lawsuit does not affect such matters as dischargeability, allowance of a claim, or any other bankruptcy

> matters. The $14 million fee, at this point, has no connection to
> the New York Bankruptcy. The Bankruptcy Court approved the
> settlement and payment of these funds on May 13, 2005, over two
> years before the defendants in this case filed their Adversary
> Proceeding. Nothing that happens to the $14 million affects MCI
> or the Bankruptcy Estate in any way. The State of Mississippi, in
> seeking this $14 million dollars, is making no claim against MCI
> or any of its successors in interest.

(Remand Decision, at 12-13)

On December 21, 2007, the State Auditor filed a motion for abstention in this Proceeding (APP 402-85) and the plaintiffs filed a motion for summary judgment on only the first and second claims for relief in the Complaint. (APP 210-401) On April 2, 2008, the Bankruptcy Court in this Adversary Proceeding abstained from hearing this dispute on the basis that it was a non-core proceeding involving state law issues, all of the factors for mandatory abstention were present, and that it would, in any event, exercise its discretion to abstain from hearing this state law dispute that has no effect on the Debtor's estates. (APP 687-95)

Appellants Balducci and Langston executed plea agreements on December 4, 2007 and January 8, 2008, respectively, in which they agreed to plead guilty to conspiracy to bribe state court judges to issue rulings favorable to Richard "Dickie" Scruggs and the Scruggs Law Firm in connection with separate actions against Scruggs and The Scuggs Law Firm relating to millions of dollars of legal fees, in violation of 18 U.S.C. § 371. (R. 24, at Exhs. "A"-"D") (Citations in the form "R. __" refer to the Record on this Appeal.)

## ARGUMENT

**B. THE BANKRUPTCY COURT CORRECTLY CONCLUDED THAT THE REQUIREMENTS FOR MANDATORY ABSTENTION WERE MET.**

The mandatory abstention provision, 28 U.S.C. § 1334(c)(2), provides:

> Upon timely motion of a party in a proceeding based upon a State law claim
> or State law cause of action, related to a case under title 11 but not arising
> under title 11 or arising in a case under title 11, with respect to which an

action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Second Circuit has held that a Court must abstain under this section if the following six requirements are met:  (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a case under title 11 or "arising under" title 11; (4) the sole basis for federal jurisdiction is section 1334; (5) an action is commenced in state court; and (6) the action is capable of being timely adjudicated in state court. *Mt. McKinley Insurance Co. v. Corning Inc.*, 399 F.3d 436, 447-48 (2d Cir. 2005); *see also Kassover v. Prism Venture Partners, LLC (In re Kassover)*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006); *In re Worldcom, Inc. Securities Litigation*, 293 B.R. 308, 331 (S.D.N.Y. 2003).

1.    The Adversary Proceeding Is a Non-Core
      Proceeding Requiring Mandatory Abstention

The threshold issue for determining mandatory abstention in this case is whether the Adversary Proceeding is "core" or "non-core".  As set forth below, the Bankruptcy Court properly held that the proceeding is non-core.  A "core" proceeding is one that is either "arising under" Title 11 or "arising in" a case under Title 11.  28 U.S.C. § 157(b)(1).  *Mt. McKinley, supra*, 399 F.3d at 447-78.  Actions that "arise under" Title 11 involve claims predicated on a right created by a provision of Title 11.  *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).  Actions that "arise in" a case under Title 11 encompass administrative matters that arise only in bankruptcy cases and would have no existence outside of the bankruptcy.  *Id.* at 407.  *See Acolyte Elec. Corp. v City of New York*, 69 B.R. 155, 173 (Bankr. E.D.N.Y. 1986) ("To be a core proceeding, an action must have as its foundation the creation, recognition or adjudication of rights which would not exist independent

- 11 -

of a bankruptcy environment.")    All non-core proceedings are subject to the <u>mandatory</u> abstention provision of 28 U.S.C. § 1334(c)(2), if the other requirements are met.  *Mt. McKinley Insurance Co. v. Corning Inc.*, 399 F.3d 436, 447 (2d Cir. 2005).  A review of the record before this Court demonstrates that the Bankruptcy Court's Decision should be upheld because the Adversary Proceeding does satisfy any of the elements of the definition of a core proceeding.

28 U.S.C. § 157(b)(2) contains a non-exclusive list of sixteen matters that are considered to be core.  While core proceedings are not necessarily limited to these sixteen examples, it is significant that the Bankruptcy Court correctly held that the Adversary Proceeding "does not fall under any of the enumerated proceedings nor is it based upon any substantive right provided in the Bankruptcy Code."  (APP 693)  Except for "matters concerning the administration of the estate," referred to in 28 U.S.C. § 157(b)(2)(A), the Langston Firm effectively admits that none of the other fifteen enumerated categories apply.

In *Mt. McKinley Insurance Co.,* the Second Circuit held that core proceedings are those that are "unique to or uniquely affected by the bankruptcy proceedings" or that "directly affect a core bankruptcy function."  399 F.3d. at 448.  The Second Circuit held that because the debtor was not involved in the lawsuit, the action sought to adjudicate the rights of non-debtors only, and the lawsuit would have no direct impact on the bankruptcy proceedings, the action was non-core.  *Id.* at 450.

As noted above, both the Bankruptcy Court and the Mississippi District Court held that the dispute is a non-core matter and should be heard by the Mississippi State Court.  Both the Bankruptcy Court and the Mississippi District Court rejected the Langston Firm's assertion that the dispute arises in the Debtors' Chapter 11 cases and involves the administration of the estate simply because of the Settlement Agreement was entered into in a bankruptcy case and was

approved by a bankruptcy court order.   To the contrary, both the Bankruptcy Court and the Mississippi District Court found that the issues raised in the Adversary Proceeding are based upon state law claims that all not "core" bankruptcy matters, and involve issues that do not "arise under" Title 11 or "arise in" the Debtors' chapter 11 cases.  (Remand Decision, at 9-13)

        (a)     The Outcome of this Dispute Will Not Have Any Effect on the
                 Reorganized Debtors or Their Estates

The Bankruptcy Court properly determined that the outcome of this dispute between the State Auditor and the Langston Firm will have no impact, positive, negative or otherwise, upon the reorganized Debtors' Chapter 11 cases, the administration thereof or the consummation of the joint plans.  (APP 691, 692-93)   In this regard, the Bankruptcy Court found that "[t]he Debtors fully complied with the Settlement Agreement and the Debtors' liability to the State is therefore concluded."  (APP 690)   Later in the opinion, the Bankruptcy Court explained that "[t]he Debtors have fully complied with the payment provisions of the Settlement Agreement by making the payments referred to in subparagraphs 8(i)-(iii)"; that, as a result, "[t]he Debtors' liability to the State is concluded"; and that "[t]he appropriate allocation of such funds pursuant to state law concerns only the State and the Langston Firm," which "will have no bearing on the settlement of the Debtors' rights and obligations effectuated under the Settlement Agreement." (APP 694) The Bankruptcy Court's finding that the outcome of this dispute will not have any effect on the Debtors' estates is properly supported by the record, which includes the following:

        (1)     The Langston Firm was not a party to the Settlement Agreement.  The Settlement Agreement provides that the only "parties" to the Settlement Agreement were those "set forth on the signature pages hereto."  (APP 033)  The only signatories were MCI, Inc., on behalf of itself and the

Reorganized Debtors, and Attorney General Hood (the "Attorney General") on behalf of the State of Mississippi. (APP 051)

(2)     The Settlement Agreement represented a compromise of the Proofs of Claim filed by the Commission, the only claims released were "the Reorganized Debtors' obligation to pay all taxes, interest, and penalties relating to the Royalty Program [as defined therein]" (APP 46), and the only "Released Parties" were the Debtors. (APP 38) Because the Langston Firm did not obtain a release under the Settlement Agreement, its rights under the Settlement Agreement will not be violated by a claim against it by the State Auditor seeking recovery of the $14 million. Accordingly, the assertion of such a claim will not provide the Langston Firm with any basis for invalidating the Settlement Agreement.

(3)     The Langston Firm did not assert any claim against the Debtors, did not execute a release in favor of the Debtors, and did not receive a release from the State of Mississippi. (APP 33-51) Rather, the only release given to the Debtors was the release from the State of Mississippi contained in the Settlement Agreement, given in consideration of $118.2 million, plus other property, paid by the Debtors "to or on behalf of the State." Consequently, even if the Langston Firm is compelled to return the $14 million to the State of Mississippi, the State will have the money that the Debtors paid, and the release given to the Debtors by the State will be unaffected.

- 14 -

(b)    This Dispute Has an Existence Outside of Bankruptcy and Invokes
       Important Public Policy Considerations for the Mississippi Courts

The Langston Firm argues that the Adversary Proceeding "arises in" a case under title 11 because it encompasses matters that "would have no existence outside of bankruptcy." (App. Brief, at 13) That argument is also without merit. This is a dispute between Mississippi citizens over whether the manner in which the Langston Firm was paid for its services rendered to the State of Mississippi violated Mississippi law. It impacts fundamental public policy concerns with respect to how Mississippi public funds are paid.

The Settlement Agreement makes clear that all of the payments made by the Debtors, regardless of how they were distributed, were in consideration of the Debtors' tax liability and were property of the State of Mississippi. Paragraph 8 of the Settlement Agreement provides that all payments of money and property to be paid by the Debtors, including the $14 million paid to the Langston Firm and the $4.2 million paid to the Justice Center, were made "as payments of tax and interest, to or on behalf of the State." (APP 45) The Settlement Agreement also provided that "in exchange for the cash payments and property transfer, the State agrees to compromise and fully release the Reorganized Debtors obligation to pay all taxes, interest, and penalties . . . ." (APP 46) These provisions make it clear that all payments made by the Debtors, regardless of how they were distributed, were in consideration of the Debtors' tax liability and were property of the State of Mississippi.

Miss. Code Ann. § 7-5-7 authorizes the attorney general to appoint and employ special counsel, such as the Langston Firm, to assist him in actions in which the state is a party, and requires that such counsel be paid "out of the Attorney General's contingent fund or any other funds appropriated to the Attorney General's office." However, the payment to the Langston Firm by the Debtors was, in fact, not made from the Attorney General's contingent fund or from

funds appropriated to the Attorney General's office.  The direct payment to the Langston Firm of $14 million of the proceeds of the tax settlement was illegal because it bypassed all legislative safeguards required by this statute.

The Mississippi courts have expressed the importance of the constitutional separation of powers doctrine that provides that the legislature has the exclusive authority to control the purse strings.  *E.g., In re Hood v. State of Mississippi,* 958 So. 2d 790 (Miss. 2007).  In *Hood*, the Mississippi Supreme Court held that it was the province of the Mississippi Legislature, and not the court, to determine how the proceeds from a tobacco settlement should be appropriated and stated:

> Before money can come out of the state treasury, such money must be appropriated by the Legislature. . . .  Without question, the expenditure of public funds is appropriately a legislative function. . . . The $20 million given annually to the Partnership has never been appropriated.  Instead, the chancery court entered the December, 2000, order on an ex parte motion by the Attorney General.  However, the chancery court is not authorized by law to make such a modification.  The tobacco installment payments are monies that unquestionably belong to the state of Mississippi, and all of these payments, including the annual payments which were diverted to the Partnership, should have been placed in the Health Care Trust Fund until properly appropriated by the Legislature. 958 So.2d at 813.

Similarly, in *Pursue Energy Corporation v. Mississippi State Tax Commission*, 816 So. 2d 385, (Miss. 2002), the Mississippi Supreme Court noted that all parties agreed that the Attorney General was obligated to apply to the Legislature to pay professional fees to attorneys representing the Mississippi State Tax Commission as follows:

> [I]t was understood by all that Blair [the attorney representing the Commission on a tax claim that had been settled] would not be paid out of any tax monies recovered.  Instead, it was contemplated that if recovery was had, the Attorney General would apply to the Legislature for an appropriation to pay the firm an amount to be measured by the terms of the retention agreement.  The Legislature could in its discretion appropriate all, part, or none of the Attorney

General's recommendation for attorneys' fees, but in no event
were they to be paid directly out of any tax monies recovered. 816
So.2d at 387.

Under Mississippi law, the $14 million must be returned by the Langston Firm to the

State of Mississippi. The Mississippi Legislature can then make an appropriation based upon the

Attorney General's recommendation in accordance with the terms of the Langston Firm's

retention agreement. However, in no event could the Langston Firm lawfully be paid directly

out of the tax monies recovered. The importance of this issue to the State of Mississippi and the

constitutional ramifications of the Langston Firm's attempt to bypass the Legislature

demonstrate that the dispute has an existence outside of bankruptcy and involves important state

public policy considerations. The Bankruptcy Court appropriately concluded that this dispute is

non-core.

> (c)    Resolution of This Dispute Does Not Involve the Enforcement
> or Implementation of a Bankruptcy Court Order

The Langston Firm asserts that the Adversary Proceeding involves the interpretation,

enforcement and implementation of a bankruptcy court order. From this, the Langston Firm

concludes that the Adversary Proceeding is "core" because it "arises in" a case under title 11

case and is a "matter concerning the administration of the estate," as referred to in 28 U.S.C. §

157(b)(2)(A). (App. Brief, at 13-18) The Langston Firm further claims that "the Bankruptcy

Court has jurisdiction to interpret and enforce the Settlement Order against the Appellees'

improper collateral attack." (App. Brief, at 18)

The Bankruptcy Court properly disposed of those arguments by finding that "[t]he

Auditor's pursuit of the $14 million paid to the Langston Firm . . . is not a collateral attack on the

Settlement Order implicating res judicata, estoppel or waiver." (APP690-91) The Bankruptcy

Court reached this conclusion based upon its factual determinations that "[t]he Auditor's dispute

- 17 -

over whether the Former Attorney General exceeded his authority in designating and allocating the settlement proceed payments made on behalf of the State is not an attack on the Settlement Order," and that "[t]hese issues were not before the Court in connection with approving the settlement of the Debtors' tax obligations to the State nor could they have been raised." (APP 690) Accordingly, the Bankruptcy Court found that it "would not have had jurisdiction over the dispute." (APP 690-91).

Further, the Bankruptcy Court also properly recognized that the dispute between the parties is not precluded by the Settlement Agreement or the Settlement Order by finding that "the Debtors have fully complied with the payment provisions of the Settlement Agreement and the Debtors' liability to the State is therefore concluded." (APP 694) The Bankruptcy Court properly found that "[t]he appropriate allocation of such funds pursuant to state law concerns only the State and the Langston Firm," which "will have no bearing on the settlement of the Debtors' rights and obligations effectuated under the Settlement Agreement." (APP 694) These findings make clear that, to the extent the Adversary Proceeding required the Bankruptcy Court to interpret or enforce the Settlement Order, it has done so and has determined that because the state law claims currently being asserted by the State Auditor against the Langston Firm were not before the Bankruptcy Court, the Settlement Order does not preclude those state law claims.

The Bankruptcy Court's findings were clearly proper given that the State of Mississippi's claims against the Langston Firm for recovery of the $14 million were not released in the Settlement Agreement. The only parties who received releases under the Settlement Agreement were the "Released Parties" -- defined in paragraph 2 of the Settlement Agreement to include "all of the Debtors and the Reorganized Debtors and all of their predecessors, successors, and all their present and former merger partners, parents, subsidiaries, divisions, affiliates, agents,

directors, officers, employees, representatives, servants, companies, corporations, limited liability corporation, ventures, partnerships, shareholders, licensees, sublicensees, and assigns." (APP 38)   The Settlement Agreement does not include releases running from the State of Mississippi in favor of the Langston Firm, nor does the Settlement Agreement release any claims by the State of Mississippi or the State Auditor with respect to the $14 million illegally received by the Langston Firm.   Accordingly, it cannot bar recovery of those monies from the Langston Firm.   under the doctrine of *res judicata* or collateral estoppel.  *E.g.*, *Pentron, Inc. v. Sisk*, 1994 U.S. Dist. LEXIS 11747, at *6 (N.D. Ill. 1994) ("A settlement agreement not intended to release a claim or permanently resolve an issue implicitly forecloses the use of *res judicata* or collateral estoppel to bar future litigation of that claim or issue."); *Carter v. Rubin*, 14 F. Supp. 2d 22, 31-32 (D.D.C. 1998) ("A settlement agreement not intended to release a claim or permanently resolve an issue implicitly forecloses the use of *res judicata* or collateral estoppel to bar future litigation of the claim or issue.")

(d)      The Law Does Support the Langston Firm's Position

The Langston Firm cites numerous cases in an attempt to find support for the general proposition that a case "arises in" a case under title 11 case, or is a "matter[] concerning the administration of the estate," where it concerns the interpretation, enforcement or implementation of a bankruptcy court's order.   However, those cases are factually distinguishable and do not support a finding that ***this case*** is core.  (App. Brief, at 13-18) Significantly, none of the cases involved a dispute over whether a provision in an agreement was illegal under state law.  Further, the cases cited by the Langston Firm all involved obvious bankruptcy law issues and/or traditional core functions of the bankruptcy court.  For example, *In re Cedar Chemical Corp.*, 294 B.R. 224, 229 (Bankr. S.D.N.Y. 2003), and *In re Sterling Optical*

*Corp.*, 302 B.R. 792, 801 Bankr. S.D.N.Y. 2003, involved the "core function of conducting and approving asset sales." *Gentry v. Gentry*, 207 B.R. 146 (E.D.Ky. 1997), and *Winstar Holdings, LLC v. The Blackstone Group*, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007), both involved the sale of the debtor's property or disposition of the debtor's collateral. *Norkin v. DLA Piper Rudnick Gray Cary, LLP*, 2006 U.S. Dist. LEXIS 14254 (S.D.N.Y. 2006), is inapposite because in that case "the outcome promise[d] to affect substantially creditors' rights in not one, but two, bankruptcies." 2006 U.S. Dist. LEXIS 14254, at *13. *In re Thomas Van Riper, Inc.*, 1999 WL 184111 (E.D.N.Y. 1999), is distinguishable from the present situation because it addressed a "request for a declaratory judgment defining the assets of the estate." 1999 WL 184111, at *3. *In re TL Adm. Corp.*, 337 B.R. 827, 829 (Bankr. S.D.N.Y. 2006), and *Comco Assoc. v. Faraldi Food Indus., Ltd.*, 170 B.R. 765, 772 (E.D.N.Y. 1994), were directly related to sale orders, which are expressly covered under 28 U.S.C. §§ 157(b)(2)(O), and in *In re Prudential Lines, Inc.*, 170 B.R. 222, 230 (S.D.N.Y. 1994), the court concluded that "because they involved enforcement of the so ordered stipulation of settlement, the Plan, and the prior summary judgment decision of the bankruptcy court, the proceedings are core."

Each of those cases involved bankruptcy issues that are not present in this case. None of those cases demonstrate how *this* dispute -- involving how attorneys hired by the State of Mississippi must be paid -- could be considered core.

Interestingly, *Chicago, Milwaukee, St. Paul & Pacific RR v. CMC Heartland Partners*, 6 F.3d 1184 (7th Cir. 1993) -- which the Langston Firm repeatedly cites in its brief -- did not even address the issue of whether a claim was "core." In *Chicago*, unlike the present case, ***the party that initiated the action was the successor-in-interest to the debtors***; and there was no need to address the underlying claim, because the issue was whether a party should have asserted its

claim as a contingent claim in the Debtors' bankruptcy case prior to the bar date set forth in the consummation order. Moreover, the primary reason the Court gave for not abstaining was that there was "no state law issue for the reorganization court to decide." By contrast, as noted above, here, the Bankruptcy Court has already properly disposed of any bankruptcy issues by finding that "[t]he Auditor's pursuit of the $14 million paid to the Langston Firm . . . is not a collateral attack on the Settlement Order implicating res judicata, estoppel or waiver" (APP 000690-91), leaving only state law issues for the Court to determine. Additionally, unlike in the *Chicago* case, the Langston Firm's third through sixth claims for relief here, all arise under Mississippi state law.

The only remaining issues in the Adversary Proceeding arise under state law and their resolution will have no effect on the Debtors' estates or the confirmed plans. The mere fact that a bankruptcy court's order may be involved does not make the matter core -- there must be some impact on the administration of the estate or on a right created by a provision of Title 11. *See In re LTV Steel Company, Inc.*, 357 B.R. 118, 121 (N.D. Ohio 2006) (motion to enjoin adjudication of state court proceeding based on a settlement agreement previously approved by the Bankruptcy Court was "a non-core proceeding over which this Court has, at most related-to jurisdiction"); *Bowen Corp., Inc. v. Security Pacific Bank Idaho, F.S.B.*, 150 B.R. 777, 783 (Bankr. D. Idaho 1993) (in finding that a case was non-core, the court held that the fact that a settlement agreement had been approved by an Arizona bankruptcy court was "beside the point" where the nature of the dispute did not involve the debtor or the debtor's estate); *In re Kmart Corp.*, 359 B.R. 189, 197 (N.D. Ill. 2005) (the Court lacked subject matter jurisdiction over post-confirmation dispute between two non-debtors involving interpretation of prior order of court and its possible preclusive effect.)

In *Kassover v. Prism Venture Partners, LLC*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006), the court concluded that a matter was non-core for the following reasons:

> [T]he State Court Action names twelve defendants - none whom are debtors in this court.  One of the Plaintiffs is not even a party to the Adversary Proceeding pending in this court.  The Debtor is deceased, the Plan was confirmed five and a half years ago, and the outcome of this action will have no effect on the Debtor's estate - if one still exists.  [Citation omitted]  ***At best, the State Court Action is tangentially related to events that occurred during the Debtor's bankruptcy proceeding but it clearly does not "arise in" or "arise under" the Bankruptcy Code and is not core***. . . . The causes of action asserted in the State Court Action do not invoke rights under Title 11.  None of the claims arise under the Plan or require this Court to interpret it and thus, can have no conceivable effect on the chapter 11 case. . . . [Emphasis supplied]

Similarly, the present case will have no effect on the Debtors or their confirmed plans of reorganization.  Because this Adversary Proceeding is "concerned only with State law issues that did not arise in the core bankruptcy function of adjusting debtor-creditor rights," *In re Arnold Print Works, Inc.*, 815 F.2d 165, 167 (1st Cir. 1987), it is non-core.

> 2.    The Court Properly Concluded That Other
>         Requirements for Mandatory Abstention Were Met

Having established that the Adversary Proceeding is non-core, the Bankruptcy Court concluded that the other requirements for mandatory abstention were satisfied.

***First***, the Langston Firm does not dispute that the motion was timely made.

***Second***, as discussed above, the Adversary Proceeding is based on a state law claim with no bankruptcy issue involved.  The dispute between these two Mississippi non-debtor parties will be resolved by the interpretation and application of Mississippi law regarding the appropriation of funds to pay legal fees for attorneys representing state agencies.  The State Auditor's dispute with the Langston Firm is based on a state law claim arising from (1) Miss. Code Ann. § 7-5-7, which required that the Langston Firm be paid "out of the Attorney General's contingent fund or any other funds appropriated to the Attorney General's office," which did not occur, and (2)

Miss. Code Ann. § 7-7-211, which gives the State Auditor the authority and duty to seek recovery of the funds from the Langston Firm. The Langston Firm's assertion that these state law claims do not impact its "right" to keep the $14 million is unsupported and without merit. The Mississippi statutes and case law setting forth the exclusive manner in which the Langston Firm may be compensated for the services the Langston Firm rendered to the Commission are central to the claims asserted in this case.

The Langston Firm asserts that its claims for res judicata, estoppel and waiver each relate to the interpretation, enforcement and finality of the Settlement Order entered by the Bankruptcy Court, which they claim are matters of federal bankruptcy law, rather than state law. (App. Brief, at 19) However, as explained above, the Bankruptcy Court, which approved the Settlement Agreement and entered the Order approving that agreement, properly concluded that "[t]he Auditor's pursuit of the $14 million paid to the Langston Firm . . . is not a collateral attack on the Settlement Order implicating res judicata, estoppel or waiver." (APP 690-91) For this reason, the cases relied on by the Langston Firm in support of its position that the Adversary Proceeding does not involve state law claims are inapposite. Further, unlike the present case, *In re Colarusso*, 382 F.3d 51, 57 (1st Cir. 2004); *In re Si Yeon Park, Ltd.*, 198 B.R. 956, 963 (Bankr. C.D. Cal. 1996); and *In re U.S.H. Corp. of New York*, 280 B.R. 330, 338 (Bankr. S.D.N.Y. 2002) -- all relied upon by the Langston Firm -- involved the interpretation of the *scope* of a bankruptcy court orders, rather than the issue of whether a non-party to such an order may assert a claim under state law to monies previously paid to a nondebtor pursuant to such an order. *In re RNI Wind Down Corp.*, 348 B.R. 286 (Bankr. D. Del. 2006), involved a motion for approval of a settlement and did not involve issues of state law. 348 B.R. at 295-97.

*Third*, as discussed above, the Adversary Proceeding is non-core.

*Fourth*, federal jurisdiction is based solely on bankruptcy jurisdiction under 28 U.S.C. § 1334. There is no independent basis for federal jurisdiction because this matter does not involve a federal question and there is no diversity of citizenship between the parties, who are both residents of Mississippi. The Langston Firm claims that an entirely independent source of federal court jurisdiction is the inherent authority of a court to enforce its own orders. That reasoning is circular. If the original basis of the Court's jurisdiction to issue an order is 28 U.S.C. § 1334, then any authority to continue to deal with that order is, ultimately, also based on 28 U.S.C. § 1334. *See Malesovas v. Sanders*, 2005 U.S. Dist. LEXIS 42344, at *8 (S.D. Tex. 2005) (the source of the court's subject matter jurisdiction was not the retention of jurisdiction provision in the Confirmation Order or the authority under the Bankruptcy Code to clarify and enforce its own orders, but rather was 28 U.S.C. § 1334), *citing United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002). Not surprisingly, the Appellants are unable to cite any case in which the court found that the requirement for a finding of mandatory abstention, that "an action could not have been commenced in a court of the United States absent jurisdiction under this Section [*i.e.*, 28 U.S.C. § 1334]," was not met based on the existence of such ancillary jurisdiction. Contrary to what the Appellants claim, *In re McClelland*, 377 B.R. 446, 455 (Bankr. S.D.N.Y. 2007), merely held that the retention of jurisdiction clause meant that the "controversy [was] 'related to' a Chapter 11 case," 377 B.R. at 455, and based its holding that the adversary proceeding was a "core" proceeding on the fact that the adversary proceeding asserted claims "against an estate professional retained by order of the Court, pertaining to work performed for, and compensated from, the bankruptcy estate." *Id.*

In any event, the Bankruptcy properly concluded, based upon the facts recited at page 3

of the Decision, that it did not have jurisdiction over the dispute between the State Auditor and the Attorney General because that dispute was never before the Bankruptcy Court, and that, as a result, "regardless of one's view as to the breadth of the Settlement Order's retention of jurisdiction provision . . ., the Court could not have retained jurisdiction over issues it never had jurisdiction over in the first place." (APP 690) Consequently, the Langston Firm's reliance on this supposedly "independent" source of jurisdiction is misplaced.

*Fifth*, the State Auditor has commenced a state court action in the state court in Mississippi. The Langston Firm incorrectly asserts that the state court action had to have been commenced *before* it instituted the Adversary Proceeding as that argument is contrary to the plain language of 28 U.S.C. § 1334(c)(2). That statute provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, *the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction*. [Emphasis supplied]

The statute simply does not require that the State Auditor must have commenced the state court action <u>before</u> the Langston Firm filed the Adversary Proceeding. The attempt to graft such a requirement onto the statute should be rejected. In *Bates & Rogers Constr. Corp. v. Continental Bank, N.A.*, 97 B.R. 905, 907-8 (N.D. Ill. 1989), the court commented:

> The language itself clearly does not call for such a restriction. It merely requires that an action be commenced in a state court with appropriate jurisdiction. If Congress had wanted to implement this restriction, it could have easily chosen the words to do so. Aside from the Court's interest in avoiding duplication of proceedings and efforts, no reason exists in the eyes of this Court to interpret this section to require a state court proceeding to be commenced prior to filing in bankruptcy, and we will not do so. Accordingly, we find that the third requirement is met.

*See also Technology Outsource Solutions, LLC v. ENI Technology, Inc.*, 2003 U.S. Dist. LEXIS 1475 (W.D.N.Y. 2003) (state court action was instituted after the bankruptcy proceeding, but the court found that mandatory abstention applied). The Langston Firm cites no authority from the Second Circuit or any District Court in New York that has interpreted the statute to require that the state court action be instituted prior to the federal action.

*Sixth,* the Mississippi Action, which has been remanded to state court, can be timely adjudicated there. "[T]imeliness [should] be referenced against the needs of the title 11 case, rather than against an absolute time guideline." *See 1 Collier on Bankruptcy* ¶3.05[2] (15th Ed. Rev. 1998). In *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 778-79 (10th Cir. B.A.P. 1997), the court explained:

> The phrase "timely adjudication" is not defined in the Bankruptcy Code. Courts interpreting this phrase have focused on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case. . . . . . . Weighing all factors, we find that the State Court action can be timely adjudicated in the State Court because administration of the estate will not be impaired by its proceeding in that forum. . . . .There is no provision in the plan for paying the Kennedys if they are successful in their counterclaim against the Debtor, nor is there any provision in the plan requiring the Debtor to pay a specific entity any monies that it may collect from the Kennedys if it is successful in the State Court action. As such, implementation of the Debtor's confirmed plan will not be impaired by proceeding in the State Court even if the State Court could not resolve the matter in more timely [manner] than the federal courts.

Similarly, in *In re Ames Dep't Stores, Inc.*, No. 01-8153 (AJG), 2006 WL 1288586, at *12 (S.D.N.Y. 2003), relied upon by the Langston Firm, the Court explained:

> The phrase "timely adjudication" is not defined in the Bankruptcy Code. Courts interpreting this phrase have focused on whether allowing an action to proceed in state court would have any unfavorable effect on the administration of a bankruptcy case.

In the instant case, the timeliness of the prosecution of the Mississippi state court action

will have no impact on the reorganized Debtors' confirmed Chapter 11 plan. *See Kassover,* 336 B.R. at 79-80 (finding mandatory abstention to be appropriate where the plan had been confirmed five years earlier, and the state action would have no effect on the debtor's estate).

Further, contrary to what the Langston Firm asserts, the State Auditor does not have the burden of presenting "evidence" that the state court action can be timely adjudicated. In *Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 180 (Bankr. E.D.N.Y. 1986), the court noted:

> Although several bankruptcy courts have required the movant affirmatively to show that the matter can be timely adjudicated in the state court, . . . this would seem to reverse the usual burden implicit in the general rule that the party seeking to litigate in a federal forum must first establish that right.

*See also Vornado Realty Trust v. Stop & Shop Supermarket Cos. (In re Bradlees, Inc.)*, 2005 U.S. Dist. LEXIS 725, at *21-22 (S.D.N.Y. Jan. 19, 2005) ("notwithstanding Vornado's argument that Stop & Shop is required to affirmative present evidence that the matter can, in fact, be timely adjudicated in state court, it is unclear that such an obligation exists"); *In re Durso Supermarkets, Inc.*, 170 B.R. 211 (S.D.N.Y. 1994) (the element that the proceeding could be "timely adjudicated" in state court was met because "[n]othing in the record suggests that DSI's claims cannot timely be adjudicated in a state court"); *Kassover v. Prism Venture Partners, LLC*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006) (this element has been met where "the Defendants failed to demonstrate that the claims cannot be timely asserted in State Court").

Accordingly, this Court should affirm the Bankruptcy Court's finding that all six requirements for mandatory abstention were met in this case.

## C.  THE BANKRUPTCY COURT PROPERLY EXERCISED ITS DISCRETION TO ABSTAIN

Even if mandatory abstention were not required, the Bankruptcy Court had the discretion to abstain under 28 U.S.C. § 1334 (c)(1). "Pursuant to that section, courts have broad discretion

to abstain from hearing claims arising under Title 11, or arising in or related to a case under Title 11, whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Cody, Inc.*, 281 B.R. at 190. *citing* 28 U.S.C. § 1334(c)(1). Courts in this District commonly weigh twelve factors in addressing a motion based on Section 1334(c)(1), although not all twelve need be present: (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than Section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties. *In re WorldCom*, 293 B.R. at 332; *Cody, Inc.*, 281 B.R. at 190-91; *In re Masterwear Corp.*, 241 B.R. 511, 521 (Bankr. S.D.N.Y. 1999). Upon a review of the record, the Bankruptcy Court properly found that consideration of those factors weighed heavily in favor of abstention. Any challenge to the Bankruptcy Court's decision to abstain must establish that the Bankruptcy Court abused its discretion -- a standard that cannot be sustained in this case.

1.    This Dispute Will Have No Effect on the Efficient Administration of the Estate

As explained above, the Bankruptcy Court correctly found that, because the Debtors' cases have been confirmed and their administration is largely complete, abstention would have no effect on the efficient administration of the estate. (APP 694) As further described above, the

Langston Firm's assertion that the State Auditor's position involves "an attack on the Settlement Agreement [that] threatens to unravel the entire settlement, exposing the Debtors' estates to substantial liabilities" (App. Brief, at 26) is unfounded. Such an assertion is directly contrary to the Bankruptcy Court's factual findings that "[t]he Debtors have fully complied with the payment provisions of the Settlement Agreement by making the payments referred to in subparagraphs 8(i)-(iii)," and that, as a result, "[t]he Debtors' liability to the State is concluded," and "[t]he appropriate allocation of such funds pursuant to state law concerns only the State and the Langston Firm," which "will have no bearing on the settlement of the Debtors' rights and obligations effectuated under the Settlement Agreement." (APP694)  Because the Settlement Agreement is not implicated, the authorities cited by the Langston Firm are not on point. Accordingly, this factor weighs in favor of abstention.

### 2.    State Law Issues Predominate Over Bankruptcy Issues

The Bankruptcy Court also correctly found that state law issues predominate over bankruptcy issues. (APP694)  Whether or not the Langston Firm must return the $14 million to the State of Mississippi will be determined under Mississippi state law. *See In re Gregory Rock House Ranch, LLC,* 339 B.R. 255, 261 (Bankr. D.N.M. 2006) ("out of respect for state law, the appellate process established by New Mexico statue for reconsideration of decisions by the state engineer, and the Water Court Structure established by the New Mexico Supreme Court for the purpose of adjudicating matters involving water law issues, the Court concludes that the principles of permissive abstention have been satisfied").  Although the Appellants assert that their claims "each relate to the interpretation, enforcement and finality of the Settlement Order entered by the Bankruptcy Court" (App. Brief, at 26), they neglect to mention that the Bankruptcy Court ruled, based upon the language of the Settlement Agreement and the proceedings before it regarding approval of the Settlement Agreement, that "[t]he Auditor's

pursuit of the $14 million paid to the Langston Firm, therefore, is not a collateral attack of the Settlement Order implicating res judicata, estoppel or waiver." (APP691)  The issues remaining between the parties involve only state law.

### 3.    The State Law Issues Are of Great Importance to the State

The Bankruptcy Court properly concluded that while the applicable provisions of the Mississippi Constitution and Mississippi Code may not be complex, "the application of such law is best considered by a Mississippi state court" (APP694), which has the far greater interest in seeing that its public funds are properly appropriated and distributed, and that its laws and statutes are properly applied. *See In re Gregory Rock House Ranch, LLC,* 339 B.R. at 261.  The Bankruptcy Court correctly recognized that, unlike in the *Chicago* and *Norkin* decisions relied upon by Appellants here, there is a "need to refer [these issues] to state court." *Chicago,* 6 F.3d at 1189 n.8.

### 4.    A Mississippi State Court Action Has Been Commenced

The State Auditor's filing of the Mississippi state court action satisfies the fourth factor, *i.e.*, "the presence of a related proceeding commenced in state court or other non-bankruptcy court," further favoring abstention.  As discussed above, the Langston Firm's attempt to discount this factor by emphasizing that the state court action was not instituted before the Adversary Proceeding is misplaced because 28 U.S.C. § 1334(c)(2) merely refers to "an action" and does not include any such requirement.

### 5.    There Is No Jurisdictional Basis Other Than 28 U.S.C. § 1334

As demonstrated above, the Bankruptcy Court correctly concluded that there is no independent jurisdictional basis for bringing this dispute in federal court other than "related to" jurisdiction under 28 U.S.C. § 1334. (APP693)

6.    This Adversary Proceeding Is Remote from the Bankruptcy Case

The Bankruptcy Court correctly concluded that the issues raised in the adversary proceeding are "remote from and not related to the bankruptcy case" because all of the parties to the dispute are non-debtors, "[n]o claim is raised against the Debtors or implicates property of the estate," and "[r]esolution of the dispute does not require an interpretation of the Settlement Agreement or the Settlement Order and will not impact, in any way, the Debtors or the bankruptcy case." (APP 694)  Accordingly, this factor weighs in favor of abstention.  For the reasons described above, the Langston Firm's assertion that the State Auditor's position involves an attack on the Settlement Agreement that will impact the Debtors' rights and obligations under the Settlement Agreement is contrary to the Bankruptcy Court's findings and without merit. (APP050, APP694)  Accordingly, this factor also weighs in favor of abstention.

7.    The Adversary Proceeding Is Non-Core

As demonstrated above, the court correctly concluded that the Adversary Proceeding is non-core.

8.    The State Law Claims Are Determinative

The Langston Firm's assertion that it is not feasible to sever the bankruptcy claims from the state law claims is without merit.  Based upon the Bankruptcy Court's findings that "[t]he Debtors have fully complied with the payment provisions of the Settlement Agreement by making the payments referred to in subparagraphs 8(i)-(iii)," and that, as a result, "[t]he Debtors' liability to the State is concluded" (APP 694), and the Bankruptcy Court's determination that "[t]he Auditor's pursuit of the $14 million paid to the Langston Firm . . . is not a collateral attack of the Settlement Order implicating res judicata, estoppel or waiver," there are no bankruptcy issues to "sever" from the state law claims, and the issue of whether the Langston Firm must repay the $14 million to Mississippi will be determined under Mississippi law.

9.    There Is No Reason to Further Burden This Court's Docket

There is no good reason to burden the Bankruptcy Court's docket with this Mississippi law matter.  The Langston Firm asserts that this matter could have been swiftly disposed of through a Summary Judgment Motion that was completely briefed.  However, that assertion fails to consider that Plaintiffs only moved for partial summary judgment on two of their six causes of action, and that if their summary judgment motion is denied, there are extensive proceedings ahead.  Since, as set forth above, the Adversary Proceeding will have no impact on the bankruptcy case, the Adversary Proceeding "is a burden on the Court's docket and the Court can put its limited resources to better use resolving disputes that have a direct affect on the many cases before it."  *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 521 (Bankr. S.D.N.Y. 1999).  Moreover, *Williams. v Citifinancial Mortgages Co. (In re Williams)*, 256 B.R. 885 (B.A.P 8th Cir. 2001), on which the Langston Firm relies, has no bearing on the present case, since in that case the Bankruptcy Appellate Panel of the Eighth Circuit had already determined that the funds in dispute should be returned.  256 B.R. at 894.

10.    The Langston Firm Does Not Want This Dispute Heard in Mississippi

The Langston Firm's insistence that it had no choice other to bring the Adversary Proceeding in bankruptcy court rings hollow.  There is no reason why it could not have sought the same declaratory relief in the Mississippi state court.  The distinct possibility remains that it was forum shopping in order to prevent the Mississippi courts from dealing with this matter.

11.    This Adversary Proceeding Involves Only Non-Debtor Parties

The Langston Firm does not dispute that all of the parties to this dispute are non-debtor parties.  Further, as demonstrated above, the Debtors cannot possibly be affected by the resolution of this dispute.  Accordingly, this factor also weighs in favor of abstention.

Consistent with the Bankruptcy Court's Decision, virtually every single factor in the above analysis strongly favors abstention, and none of those factors militate against abstention. Consequently, the Bankruptcy Court acted well within its discretion in finding that the requirements for permissive abstention were met and the Decision should be affirmed.

Finally, the Langston Firm's assertion that this case should be remanded for further proceedings and greater discussion in the Bankruptcy Court because the Bankruptcy Court's order and opinion provides insufficient analysis or an independent neutral conclusion is wholly without merit. The Bankruptcy Court issued an eight page decision setting forth its analysis, reasoning and explanation forming the basis for its ultimate conclusions, as well as the factual bases for those conclusions. Any suggestion by the Langston Firm, based upon its reliance on *Chicago* and *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990), that the Bankruptcy Court did not conduct an independent analysis of this dispute, should be rejected.

## CONCLUSION

For the foregoing reasons, the Decision of the Bankruptcy Court should be affirmed.

Dated: New York, New York
        July 18, 2008

Respectfully submitted,

Arthur F. Jernigan, Esq. ( MSB No. 3092)
Craig M. Geno, Esq. ( MSB No. 4793)
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway
P.O. Box 3380
Ridgeland, MS 39158-3380
Telephone: (601) 427-0048
Facsimile:   (601) 427-0050

- 33 -

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.

By:   s/Andrew M. Kramer
Andrew M. Kramer (AK 4438)
Andrew S. Halpern (AH 7905)
230 Park Avenue
New York, New York 10169-0075
Telephone: (212)-661-9100
Facsimile: (S212)-682-6104

*Counsel for Appellee Stacey Pickering
in his capacity as Auditor for the State of
Mississippi*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

THE STATE OF MISSISSIPPI and
STACEY PICKERING in his capacity as Auditor
For the State of Mississippi                                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:08-cv-61 HTW-LRA

THE LANGSTON LAW FIRM, P.A.,
JOSEPH C. LANGSTON, and TIMOTHY
R. BALDUCCI                                               DEFENDANTS

## ORDER GRANTING REMAND

Before this court is a motion seeking remand filed by the plaintiffs in this action,

the State of Mississippi and Stacey Pickering in his capacity as Auditor for the State of

Mississippi (hereinafter collectively, "State Auditor"). This remand motion, calling upon

the reach of Title 28 U.S.C. § 1447(c),[1] aims to persuade this court to return this lawsuit

to the Circuit Court of Hinds County, Mississippi, where it was filed originally before

defendants herein, the Langston Law Firm, P.A., Joseph C. Langston, and Timothy R.

Balducci, invoked the procedural muscle of Title 28 U.S.C. §§ 1441[2] and 1446[3] to lift

---

[1]Title 28 U.S.C. § 1447(c) provides in relevant part that, "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after filing the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. ..."

[2]Title 28 U.S.C. § 1441(a) states as follows: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

[3]Title 28 U.S.C. § 1446(a) provides that, "[a] defendant or defendants desiring to remove any civil action ... from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to

this lawsuit from the aforementioned state court to this federal forum. Their Notice of Removal recites the following:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title. 28 U.S.C. § 1452. District courts have original, non-exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334.

Plaintiffs' motion to remand, in summary, criticizes defendants' removal on the ground that the factual urgings of this lawsuit do not and cannot fit into either one of the two statutory-blessed bases for removal – diversity of citizenship, Title 28 U.S.C. § 1332;[4] or federal question, Title 28 U.S.C. § 1331.[5] Included within the embrace of

---

Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings and orders served on such defendant or defendants in such action."

[4]Title 28 U.S.C. § 1332 provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–

(1) citizens of different States; ...

[5]Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

2

§ 1331, bankruptcy removals are codified at Title 28 U.S.C. § 1334[6] and § 1452.[7]  As shown below, plaintiffs take strong exception to defendants' removal on this ground.

## BACKGROUND

Once in complaint form, this lawsuit gathered its first air of birth on December 20, 2007, when it was filed in the Circuit Court of Hinds County, Mississippi.  Suing the Langston Law Firm, P.A., Joseph C. Langston, and Timothy R. Balducci, the State Auditor, plaintiff, sought the return to the State of Mississippi of $14 million from the Langston Firm.  This sum of money had come to the Langston Firm directly from settlement proceeds in bankruptcy court paid by MCI WorldCom (now Verizon).  Earlier, MCI WorldCom had sought protection under Chapter 11[8] from creditors in a bankruptcy proceeding entitled In re WorldCom, Inc., et al., Case No. 02-13533 (AJG), filed in the United States Bankruptcy Court for the Southern District of New York.  Determined to see its tax claims ratified, the State of Mississippi had filed a claim in that bankruptcy proceeding.  Eventually, the matter was settled.  The State of Mississippi received $100,000,000.00 in settlement, and the Langston Law Firm, as the attorneys for Mississippi, were paid the 14 million dollars in attorney fees.

_____

[6]Title 28 U.S.C. § 1334(a) provides:

(a)  Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

[7]Title 28 U.S.C. § 1452(a), provides that, "a party may remove any claim or cause of action in a civil action ... to the district court for the district where the civil action is pending, if such district court has jurisdiction ...  under section 1334."

[8]Chapter 11 contemplates rehabilitation of the debtor.  "Rehabilitation as used in 11 U.S.C. § 1112(b)(1) means to put back in good condition; re-establish on a firm, sound basis."  See Loop Corporation v. U.S. Trustee, 379 F.3d 511, 517 (8th Cir. 2004).

Whether the defendants herein are entitled to the 14 million dollars depends upon the juridical empowerment of the settlement agreement between MCI and the Attorney General for the State of Mississippi, Jim Hood, effective May 6, 2005. Section 8(ii) of the settlement agreement provides for "settlement payment and releases" and states that MCI will pay on behalf of the State of Mississippi, "[f]ourteen million and 00/100 dollars ($14,000,000.00) in counsel fees and costs to Joseph C. Langston and Timothy R. Balducci of the Langston Law Firm, P.A., tax i.d. number 64-0867806, acting as Special Assistant Attorneys General for the State; ... ."

The Amended Complaint filed by the State Auditor in state court before the lawsuit's removal, claims that Miss. Code Ann. § 7-5-7[9] makes illegal the use of public

_____

[9]Miss. Code Ann. § 7-5-7. Special counsel and investigators.

The governor may engage counsel to assist the attorney general in cases to which the state is a party when, in his opinion, the interest of the state requires it, subject to the action of the legislature in providing compensation for such services.

The attorney general is hereby authorized and empowered to appoint and employ special counsel, on a fee or salary basis, to assist the attorney general in the preparation for, prosecution, or defense of any litigation in the state or federal courts or before any federal commission or agency in which the state is a party or has an interest.

The attorney general may designate such special counsel as special assistant attorney general, and may pay such special counsel reasonable compensation to be agreed upon by the attorney general and such special counsel, in no event to exceed recognized bar rates for similar services.

The attorney general may also employ special investigators on a per diem or salary basis, to be agreed upon at the time of employment, for the purpose of interviewing witnesses, ascertaining facts, or rendering any other services that may be needed by the attorney general in the preparation for and prosecution of suits by or against the state of Mississippi, or in suits in which the attorney general is participating on account of same being of statewide interest.

The attorney general may pay travel and other expenses of employees and appointees made hereunder in the same manner and amount as authorized by law for the payment of travel and expenses of state employees and officials.

funds to pay attorneys retained as Special Assistants to the Attorney General except "out of the Attorney General's contingent fund, or any other funds appropriated to the Attorney General's office."  The Complaint also asserts that Mississippi makes unlawful the spending of public funds except upon a two-thirds (2/3) vote of the Mississippi Legislature, citing Miss. Constitution, 1890 § 66.[10]

So, says the State Auditor, even though the defendants entered into a retention agreement with the Attorney General wherein they were designated Special Assistant Attorneys General to represent the State of Mississippi's interest in pursuing the tax claims, these defendants, in accepting this enormous fee directly from the MCI settlement proceeds,[11] indulged in conduct offensive to both the Mississippi Code and the Mississippi Constitution.  Thus, on November 20, 2006, and March 12, 2007, the State Auditor demanded that the $14 million be paid to the State of Mississippi.

Predictably happy with the fee distribution, the defendants on September 21, 2007, filed an adversary proceeding in the Bankruptcy Court for the Southern District of New York, Case No. 07-02044-AJG, within the MCI bankruptcy proceeding. This adversary proceeding sought before the state lawsuit was filed by the State Auditor, but

---

The compensation of appointees and employees made hereunder shall be paid out of the attorney general's contingent fund, or out of any other funds appropriated to the attorney general's office.

[10]The Mississippi Constitution of 1890, § 66, states: "No law granting a donation or gratuity in favor of any person or object shall be enacted except by the concurrence of two-third of the members elect of each branch of the Legislature, nor by any vote for a sectarian purpose or use."

[11]The Settlement Agreement entered into on May 6, 2005, says that the $14 million would be paid one day after the effective date of the agreement.  The agreement was approved by the New York Bankruptcy Court on May 13, 2005.

subsequent to the State Auditor's demands for the return of the $14 million, asks the New York Bankruptcy Judge to rule that the State Auditor is precluded by principles of estoppel and waiver from demanding return of the settlement proceeds. Defendants contend that the Bankruptcy Court has retained jurisdiction to effectuate its Order, and should be permitted to protect its Settlement Order from collateral attack.

On December 20, 2007, the State Auditor filed a motion for abstention in the New York Bankruptcy Court. This move calculated to freeze defendants' adversary proceeding so that this matter could be resolved through the lawsuit also filed December 20, 2007, in the Circuit Court of Hinds County, Mississippi, which is the instant case removed to this court.

The State Auditor argues to the New York Bankruptcy Court as follows: (1) the dispute is a non-core proceeding *between two non-debtor parties* from the State of Mississippi with respect to issues of Mississippi law; (2) the dispute presents no issues of bankruptcy law; and (3) the outcome will have no impact, positive, negative or otherwise, upon MCI, the reorganized Debtors' Chapter 11 cases, the administration thereof or the consummation of the joint plans thereunder.

A snapshot of the dispute between the parties relative to the $14 million dollars, at this point, portrayed two scenes – the on-going struggle in the New York Bankruptcy Court and the growing battle posed by the litigation in the Mississippi state court.

This chess match then saw another move. The Langston Defendants removed this action from state court to this federal forum under the purported authority of Title 28 U.S.C. §§ 1334 and 1452. According to the defendants, the central issue relative to the ownership of the $14 million is one the New York Bankruptcy Court should address.

6

The vehicle for transporting the issue there, say the Langston Defendants, is for this court to accept removal of the state lawsuit to this federal forum, then transfer the litigation to the United States District Court for the Southern District of New York, so that federal court could further transfer this case to the New York Bankruptcy Court.

The defendants Langston, Balducci and their law firm cite Title 28 U.S.C. § 1412[12] as authority for their motion to transfer this case to the Bankruptcy Court in New York. Section 1412 allows a district court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

The defendants contend that a transfer of venue is necessary: (1) because it will serve the interests of justice; (2) because the State of Mississippi's lawsuit is a collateral attack on the settlement with MCI; (3) because federal law favors settlements; (4) because transfer will promote more efficient administration of MCI's bankruptcy estate; and (5) because the New York Bankruptcy Court has retained jurisdiction over the settlement agreement and should make any and all calls with regard to whether this matter is a core or non-core proceeding.

In its papers arguing for remand, the State of Mississippi, relying upon certain of the same arguments the State is simultaneously making in the New York Bankruptcy Court, says its abstention motion in the Bankruptcy Adversary Proceeding establishes

---

[12]Title 28 U.S.C. § 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

all six requirements for mandatory abstention pursuant to Title 28 U.S.C. § 1334 (c)(2)[13] and easily meets the abstention and remand requirements under §1452(b).[14]  This dispute, says the State Auditor, is purely a matter of State law governed by the Mississippi Code and Constitution.  The $14 million, adds the State of Mississippi, to be legally paid to the defendants, necessarily must be paid from either the Attorney General's funds or by a  legislative appropriation, neither of which occurred.  So, under Miss. Code Ann. § 7-7-211(g), the State Auditor says he is obliged to investigate the management of these allegedly public funds to determine if they have been improperly withheld, misappropriated and/or otherwise illegally spent.  Hence, says the State Auditor, this matter should be remanded to state court where the question of the relationship between the defendants, who were designated Special Assistant Attorneys General, and the Attorney General who hired them, may be examined.

## APPLICABLE LAW

In circumstances where a party in a civil state court action has filed for relief from indebtedness in the federal bankruptcy court, a party to that litigation may seek to remove that civil action to that same bankruptcy court through the district court.  *Matter*

---

[13]Title 28 U.S.C. § 1334(c)(2) provides that, "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

[14]Title 28 U.S.C. § 1452(b) provides that, "[t]he court to which such [bankruptcy] claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title [28 USCS § 158(d), 1291, or 1292] or by the Supreme Court of the United States under section 1254 of this title [28 USCS § 1254].

*of Texas General Petroleum Corp.*, 52 F.3d 1330, 1336 (5th Cir. 1995). Title 28 U.S.C.

§ 1452(a), provides that, "a party may remove an action from state court to federal

district court if the district court has jurisdiction under section 1334." Section 1334 gives

district courts jurisdiction over civil actions "arising under Title 11, or arising in or related

to cases under Title 11." 28 U.S.C.A. § 1334(b). The maxim that removal statutes are

to be strictly construed, and any doubts concerning removal resolved against removal

and in favor of remanding the case to state court, applies in the bankruptcy court.

*Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214

(1941); *Blackmore v. Rock-Tenn Co. Mill Div., Inc.*, 756 F.Supp. 288, 289 (N.D.Tex.

1991); *Luevano v. Dow Corning Corp.*, 183 B.R. 751, 752 (W.D. Tex. 1995).

Before this court may transfer venue to the applicable district court in New York,

and from there to the Bankruptcy Court,[15] this court first must determine whether this

case is one over which the New York Bankruptcy Court should preside. The

defendants urge this court so to find. This court is not persuaded to do so.

Title 28 U.S.C. § 157(b)(1) provides that bankruptcy judges may hear and

determine all cases under title 11 and all core proceedings arising under title 11, or

arising in a case under title 11, referred under subsection (a) of this section, and may

---

[15]Bankruptcy courts are courts of limited jurisdiction and their jurisdiction is "wholly 'grounded in and limited by statute.' " *See Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999). Even if this court were to determine that transfer to another district would be more convenient, the court must still determine whether transfer would be in the interests of justice. *Frazier v. Commercial Credit Equipment Corp.*, 755 F.Supp. 163, 167 (S.D. Miss. 1991), citing *Ferens v. John Deere Co.*, 494 U.S. 516, 521-23, 110 S.Ct. 1274, 1279, 108 L.Ed.2d 443 (1990) (§ 1404(a) "permits a transfer only when convenient *and* 'in the interests of justice' "). The "interests of justice" component of § 1404(a) may, in itself, be determinative of the decision to allow a transfer, even where the convenience of the parties and witnesses would call for a different result. Searcy v. Knostman, 155 B.R. 699, 708 (S.D. Miss. 1993), citing *Frazier*, 755 F.Supp. at 167.

9

enter appropriate orders and judgments, subject to review under section 158 of this title." While Congress has not fully defined what constitutes "core" or "non-core" disputes, Title 28 U.S.C. § 157(b)(2) provides a non-exclusive listing of core proceedings, which includes the following:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, ... .

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the

10

adjustment of the debtor-creditor or the equity security holder relationship, except

personal injury tort or wrongful death claims; and

      (P) recognition of foreign proceedings ... under chapter 15 of title 11.

***

      The United States Supreme Court, in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held that (1), "bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy" and that (2), "controversies that do not depend on the bankruptcy laws for their existence, that is, suits that could proceed in another court even in the absence of bankruptcy, are not core proceedings." Moreover, bankruptcy courts may not exercise original jurisdiction over adversary proceedings that do not intimately involve the debtor-creditor relationship and rest solely in issues of state law. *Id.*, 458 U.S. at 84, 102 S.Ct. at 2878, 73 L.Ed.2d at 623; *see also In re Wood*, 825 F.2d 90, 95-96 (5th Cir. 1987).

      The United States Court of Appeals for the Fifth Circuit has cautioned in its *In Re Wood* opinion that the statutory listing, in particular § 157(b)(2)(O), should not be read so broadly that the dictates *of Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, would be violated. *In Re Wood*, 825 F.2d at 95. And, with regard to core matters, the Fifth Circuit recognizes that a proceeding is core under § 157 if it invokes a substantive right provided by title 11 of the United States Code or if it is a proceeding that, by its nature, could arise *only in the context of a bankruptcy case*. *In Re Wood*, 825 F.2d at 97; *see also In re U.S. Brass Corporation*, 301 F.3d 296, 304 (5th Cir.

11

2002).

## ANALYSIS

The instant case, removed here by defendants from the Circuit Court for the First Judicial District of Hinds County, Mississippi, is not based on any right created by the federal bankruptcy law. The State Auditor specifically refers to his obligations and duties under state law. Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is, simply stated, an action to determine the authority of the Attorney General for the State of Mississippi under Mississippi law to enter into contracts with his choice of designated Special Assistant Attorneys General, where said contracts permit these designated Special Assistants to receive attorney fees from successful litigation, as would a private attorney for a non-governmental client, directly from the litigation, and not from funds held by the Attorney General and not pursuant to any action of the Mississippi Legislature. Thus, were there no action in bankruptcy, this case still could proceed in state court based on issues wholly within the province of state law.

So, the essential issue in the state court proceeding is whether the defendants are liable under state law to repay the $14 million dollars they received as Special Assistant Attorneys General. The lawsuit does not affect such matters as dischargeability, allowance of a claim, or any other bankruptcy matters. The $14 million fee, at this point, has no connection to the New York Bankruptcy. The Bankruptcy Court approved the settlement and payment of these funds on May 13, 2005, over two years before the defendants in this case filed their Adversary Proceeding. Nothing that happens to the $14 million affects MCI or the Bankruptcy Estate in any way. The State

12

of Mississippi, in seeking this $14 million dollars, is making no claim against MCI or any of its successors in interest.

As noted by counsel for the State Auditor, what remains before the Bankruptcy Court in New York is administration under Chapter 11 which may be ongoing. Counsel for the State Auditor also suggests that a Plan of Reorganization already has been accepted by the Court. This court is not duly apprised on the record of the whole status of MCI's bankruptcy, but this is of no moment here. If the New York Bankruptcy Court were to exercise adjudicatory jurisdiction as to any of the claims of the State Auditor, this court is persuaded that the dictates of *Marathon* would be violated, especially when the State Auditor's claims implicate no rights and powers of bankruptcy, do not depend upon the bankruptcy laws for their existence, and are claims that could proceed in state court even in the absence of bankruptcy. All the State Auditor's claims relate to state-created law. Indeed, the state court proceeding will not just be affected by state law, it will be dictated by the state court's interpretation of that law. This will have no effect upon the Order of the Bankruptcy Court in New York.

### CONCLUSION

Therefore, based on the foregoing, this case is hereby remanded to the Circuit Court for the First Judicial District of Hinds County, Mississippi.

**SO ORDERED**, this the 11th day of June, 2008.

s/ **HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:08-cv-61 HTW-LRA
Order Granting Remand

13