Michael P. Richman (MR 2224)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 682-7474
Fax: (212) 682-2329
email: mrichman@foley.com

-and-

Geoffrey Goodman (*admitted pro hac vice)*
Joanne Lee (*admitted pro hac vice*)
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60610
Phone: (312) 832-4500
Fax: (312) 832-4700

*Attorneys for Appellants Langston Law Firm, PA, Joseph C. Langston, and Timothy R. Balducci*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WORLDCOM, INC., et al.,<br><br>Debtors. | Chapter 11<br>Jointly Administered<br><br>Case No. 02-13533 (AJG) |
| THE LANGSTON LAW FIRM, PA, JOSEPH C. LANGSTON, and TIMOTHY R. BALDUCCI,<br><br>Appellants,<br><br>v.<br><br>THE STATE OF MISSISSIPPI, STACEY PICKERING in his capacity as Auditor for the State of Mississippi, and PHIL BRYANT, in his capacity as former Auditor for the State of Mississippi,<br><br>Appellees. | Case No. 08-C-04331<br><br>Adversary Proceeding No. 07-02044 (AJG)<br><br>**<u>REPLY BRIEF OF APPELLANTS IN SUPPORT OF APPEAL OF BANKRUPTCY COURT'S ABSTENTION ORDER</u>**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Table of Contents ........ i

Introduction ........ 1

Argument ........ 2

I. "Mandatory Abstention" Under 28 U.S.C. § 1334(C)(2) Does Not Apply To Claim Preclusion ........ 2
  - A. Mandatory Abstention Does Not Apply Because The Adversary Proceeding Seeking to Bar the State under Claim Preclusion Is A Core Proceeding ........ 2
    - 1. This Case Is A Core Proceeding "Arising In" A Chapter 11 Case ........ 3
      - (a) This Dispute Entails The Construction And Enforcement Of A Bankruptcy Court Order ........ 3
        - (i) The Appellees' State Law Claims Are Not At Issue Because As A Threshold Matter They Should Be Held Barred By The Doctrines Of Res Judicata And Estoppel ........ 3
        - (ii) Disputes Between Non-Debtors Are "Core" If They Involve The Construction Of A Bankruptcy Court Order ........ 6
      - (b) This Case Would Have No Existence Outside Of Bankruptcy ........ 8
    - 2. This Case Is A "Core Proceeding" Because It Is A "Matter Concerning The Administration Of The Estate" ........ 9
  - B. The Appellees Cannot Establish Four Of The Remaining Elements Required For Mandatory Abstention ........ 12
    - 1. This Proceeding Does Not Arise Under State Law ........ 12
    - 2. Section 1334 Of The Judicial Code Is Not The Only Source Of The Bankruptcy Court's Jurisdiction Over This Case ........ 14
    - 3. The Appellees Had Not "Commenced" The State Court Action At The Time The Appellants Filed This Adversary Proceeding ........ 15
    - 4. This Proceeding Cannot Be "Timely Adjudicated" In State Court ........ 16

II. Discretionary Abstention Is Not Warranted In This Dispute ........ 17
  - A. State Law Issues Do Not Predominate Over Bankruptcy Issues ........ 18
  - B. The Burden On The Bankruptcy Court's Docket Is Outweighed By Considerations Of Judicial Economy ........ 19
  - C. The Appellants' Filing Of This Case In Bankruptcy Court Was Not Motivated By Forum Shopping ........ 20

Conclusion ........ 21

# TABLE OF AUTHORITIES

**CASES**

Am. Booksellers Ass'n, Inc. v. Houghton Mifflin Co., Inc., No. 94 Civ. 8566 (JFK), 1998 WL 436364 (S.D.N.Y. July 28, 1998) ....14

Bekhor v. Bear, Stearns and Co., Inc., No. 96 Civ. 4156, 2004 WL 2389751 (S.D.N.Y. Oct. 25, 2004) ....11

Bowen Corp., Inc. v. Security Pacific Bank Idaho, F.S.B., 150 B.R. 777 (Bankr. D. Idaho 1993)....8

Celeste Trust Reg. v. CBQ, Inc., No. 03 Civ. 9650 (RMB), 2006 WL 2053311 (S.D.N.Y. July 21, 2006)....4, 11

Comco Assocs. v. Faraldi Food Indus., Ltd., 170 B.R. 765 (E.D.N.Y. 1994) ....10

Gentry v. Gentry, 207 B.R. 146 (E.D. Ky. 1999) ....7

In the Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184 (7th Cir. 1993) .... 9-10, 19, 20

In the Matter of Rimsat, Ltd., 98 F.3d 956 (7th Cir. 1996) ....16

In re AHT Corp., 265 B.R. 379 (Bankr. S.D.N.Y. 2001) ....12, 16

In re Ames Dep't Stores, Inc., No. 01-8153 (AJG), 2006 WL 1288586 (Bankr. S.D.N.Y. Apr. 19, 2006) ....16

In re Bradley, No. 06-51470-RBK, 2007 WL 1500876 (Bankr. W.D. Tex. May 18, 2007)....8

In re Colarusso, 382 F.3d 51 (1st Cir. 2004) ....13, 18

In re Consol. Lewis Inv. Corp.-Ltd. P'ship, 78 B.R. 469 (Bankr. M.D. La. 1987)....15

In re Container Transp., Inc., 86 B.R. 804 (Bankr. E.D. Pa. 1988) ....15

In re DeLorean Motor Co., 155 B.R. 521 (9th Cir. 1993) ....20

In re Ionosphere Clubs, Inc.,
111 B.R. 423 (Bankr. S.D.N.Y. 1990)....9

In re Kassover,
336 B.R. 74 (Bankr. S.D.N.Y. 2006)....8

In re Keene Corp.,
182 B.R. 379 (S.D.N.Y. 1995)....9

In re Kmart Corp.,
359 B.R. 189 (Bankr. N.D. Ill. 2005)....8

In re LTV Steel Co., Inc.,
357 B.R. 118 (N.D. Ohio 2006)....8, 15

In re Petrie Retail, Inc.,
304 F.3d 223 (2d Cir. 2002)....3

In re Prudential Lines, Inc.,
170 B.R. 222 (S.D.N.Y. 1994)....10

In re RNI Wind Down Corp.,
348 B.R. 286 (Bankr. D. Del. 2006)....13, 19

In re S.G. Phillips Constructors, Inc.,
45 F.3d 702 (2d Cir. 1995)....3

In re Si Yeon Park, Ltd.,
198 B.R. 956 (Bankr. C.D. Cal. 1996)....13, 18

In re Sterling Optical Corp.,
302 B.R. 792 (Bankr. S.D.N.Y. 2003).... 3, 6-7

In re Thomas Van Riper, Inc.,
No. 97 CV 5332 (SJ), 1999 WL 184111 (E.D.N.Y. Mar. 23, 1999)....9

In re TL Admin. Corp.,
337 B.R. 827 (Bankr. S.D.N.Y. 2006)....10

In re U.S.H. Corp. of New York,
280 B.R. 330 (Bankr. S.D.N.Y. 2002).... 13, 18-19

In re WorldCom, Inc. Sec. Litig.,
293 B.R. 308 (S.D.N.Y. 2003)....2, 16

LTV Corp. v. Back.,
201 B.R. 48 (Bankr. S.D.N.Y. 1996)....15

McClelland v. Grubb & Ellis Consulting Servs. Co.,
377 B.R. 446 (Bankr. S.D.N.Y. 2007) ........................................................................14

Monahan v. New York Dept. of Corrections,
214 F.3d 275 ...........................................................................................................4

Norkin v. DLA Piper Rudnick Gray Cary, LLP,
No. 05 Civ. 9137(DLC), 2006 WL 839079 (S.D.N.Y. Mar. 31, 2006) ....................................7

O'Hora v. Powerex, Inc.,
No. 90-CV-1390, 1991 WL 163509 (N.D.N.Y. Aug. 21, 1991) ...........................................11

Rahl v. Bande,
316 B.R. 127 (S.D.N.Y. 2004) ..............................................................................17

Reynolds v. C.I.R.,
861 F.2d 469 (6th Cir. 1988) ...................................................................................8

United States, ex rel. Finney v. Nextwave Telecom, Inc.,
337 B.R. 479 (S.D.N.Y. 2006)............................................................................ 4-5

Winstar Holdings, LLC v. Blackstone Group, L.P.,
No. 07 Civ. 4634(GEL), 2007 WL 4323003 (S.D.N.Y. December 10, 2007) ......................3, 7

**STATUTES**

28 U.S.C. § 157(b)(2)(A)............................................................................... 3, 9-10

28 U.S.C. § 1334.............................................................................................2, 15

28 U.S.C. § 1334(c)(1)...................................................................................18, 21

28 U.S.C. § 1334(c)(2).................................................................................2, 13, 16

## INTRODUCTION

The fundamental flaw in the Bankruptcy Court's Opinion[1] as well as the Appellees' Brief is their failure to address the threshold issue of whether the alleged state law claims set forth in the Appellees' Counterclaim should have been raised by the State as an objection to the Settlement Order of 2005, and therefore should now be held barred by the claim preclusion principles in the doctrines of *res judicata*, collateral estoppel and waiver. The Bankruptcy Court erred by apparently believing that it did not need to consider doctrines of claim preclusion *because the state law claims had not been presented in 2005*. Preclusion only comes into play where, as here, claims were not previously presented at the time when they should have been.

The Appellees' argument that the Bankruptcy Court is not the proper forum for the adjudication today of the State Auditor's claim that the Langston Law Firm should not have received legal fees from the Worldcom bankruptcy estate in 2005 is simply the wrong argument on the wrong point. The State's objection to the payment of legal fees to the Langston Law Firm, whether based on state law or anything else, was required, as a matter of federal law, to be raised in opposition to the 2005 Settlement Motion in the Bankruptcy Court. Our legal system should not tolerate a state (or anyone else) sitting on its rights, failing to object or appeal, allowing a settlement order to become final, and then some two years later instituting litigation to undo the payment allowed by the Bankruptcy Court by making an end run around the finality of the Bankruptcy Court Order in a home court under state law. The federal principles of claim

[1] Capitalized terms shall have the meaning ascribed to them in the Appellants' Opening Brief.

preclusion should preclude belated attempts to litigate like this whether those attempts are pursued in federal or state court.

## ARGUMENT

### I. "MANDATORY ABSTENTION" UNDER 28 U.S.C. § 1334(C)(2) DOES NOT APPLY TO CLAIM PRECLUSION

The Bankruptcy Court skipped claim preclusion, and, jumping to consideration of completely out-of-context state law claims asserted two years after the Settlement Order was entered, erroneously concluded that it was required to abstain from hearing this case under the "mandatory abstention" provision codified in § 1334(c)(2) of title 28 of the United States Code (the "Judicial Code").[2]

Because a dispute regarding the interpretation and enforcement of a bankruptcy court order (including the determination of whether the claims for which abstention is sought should be precluded under principles of claim preclusion and doctrines of *res judicata,* collateral estoppel and other doctrines barring collateral attacks) is by its very terms, a "core proceeding," the Appellees' mandatory abstention argument fails to meet the mandatory criteria for such relief, and the Bankruptcy Court erred in holding otherwise.

#### A. Mandatory Abstention Does Not Apply Because The Adversary Proceeding Seeking To Bar The State Under Claim Preclusion Is A Core Proceeding

Although all six elements are required for mandatory abstention to apply, the Second Circuit has held that a threshold determination of whether a dispute is a "core" proceeding should be made before considering the remaining five factors, because the issue is

[2] A Bankruptcy Court is required to abstain from hearing a dispute only when the movant establishes all six of the elements : (a) the abstention motion was timely; (b) the action is a "non-core" proceeding that is "related to a case under title 11" but not "arising in a case under" or "arising under" the Bankruptcy Code; (c) the action is based upon a state law claim; (d) the sole basis for federal jurisdiction is section 1334; (e) an action is commenced in state court; and (f) the action is capable of being timely adjudicated in state court. See In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 331 (S.D.N.Y. 2003).

dispositive on the question of mandatory abstention. See In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002); see also In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 708 (2d Cir. 1995) ("[A]bstention is only mandated with respect to non-core matters."). Here, this case is a core proceeding for two reasons. First, this case (the Appellants' adversary proceeding seeking to bar the state law claims, and not the state law claims themselves) "arises in" the Debtors' Chapter 11 Cases. Second, this case is "core" because the application of claim preclusion to protect the integrity of the 2005 Settlement Order is unquestionably a "matter concerning the administration of the estate" under 28 U.S.C. § 157(b)(2)(A).

### 1. This Case Is A Core Proceeding "Arising In" A Chapter 11 Case

#### (a) This Dispute Entails The Construction And Enforcement Of A Bankruptcy Court Order

This case is a core proceeding "arising in" a chapter 11 case because it involves "the enforcement or construction of a bankruptcy court order." In re Sterling Optical Corp., 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003); Winstar Holdings, LLC v. Blackstone Group, L. P., No. 07 Civ. 4634(GEL), 2007 WL 4323003, at *3 (S.D.N.Y. December 10, 2007) (quoting Sterling Optical).

##### (i) The Appellees' State Law Claims Are Not At Issue Because As A Threshold Matter They Should Be Held Barred By The Doctrines Of Res Judicata And Estoppel

The Appellees argue that this case does not involve the construction or enforcement of a Bankruptcy Court Order, relying on the Bankruptcy Court's finding that "[t]he Auditor's pursuit of the $14 million paid to the Langston Firm . . . is not a collateral attack on the Settlement Order implicating *res judicata*, estoppel or waiver." (App 690-91.)[3]

[3] "APP" refers to the pages in the Appellant's Appendix.

As the Bankruptcy Court clearly erred in ignoring claim preclusion, so too do the Appellees err. The simple question is whether the State's objection to the payment of legal fees by the Debtors to the Appellants should have been raised by the State to the Bankruptcy Court when the very question of the payment of such fees was before the Court on the Settlement Motion. At no time in the proceedings below or on this appeal have the Appellees ever answered that question, because the only reasonable answer is yes, it should have been raised, and yes, it could have been raised.

*Under the doctrine of res judicata the effect of judgment extends to all issues that were raised, or could have been raised, in the prior action.* Monahan v. New York Dept. of Corrections, 214 F.3d 275, 285; Celeste Trust Reg. v. CBQ, Inc., No. 03 Civ. 9650 (RMB), 2006 WL 2053311, at *3 (S.D.N.Y. July 21, 2006). For instance, the Court in United States, ex rel. Finney v. Nextwave Telecom, Inc., 337 B.R. 479 (S.D.N.Y. 2006) applied the doctrine of *res judicata* to bar the plaintiff's claim under facts similar to those in the instant case. Finney involved a lawsuit brought by an individual in a qui tam action under the False Claims Act against former debtors and their attorneys. The plaintiff attempted, among other things, to challenge a settlement agreement that the debtors had entered into with the FCC in a proceeding to which the plaintiff was not a party. Id. at 489-90. According to the plaintiff, the settlement agreement was illegal under the Federal Credit Reform Act (the "CRA").

As in the instant case, the alleged illegality of the settlement in the Finney case had not been presented to the Court during the bankruptcy proceeding, and the plaintiff argued that, for that reason, her claim should not be barred by *res judicata*. The court disagreed, stating that "[r]es judicata dictates that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action that were [sic] previously available to the parties,

regardless of whether they were asserted or determined in the prior proceeding." Id. at 490 (quoting In re Jamesway Corp., 205 B.R. 32, 36 (Bankr. S.D.N.Y. 1996)). The court further explained that:

> the government could have raised the CRA as a defense to [the debtor's] global settlement at any point . . . . However, none of the FCC's counsel saw fit at any point during the protracted bankruptcy proceedings to challenge the settlement on that ground. [The plaintiff's] attempt, more than 10 months after the settlement was approved, to raise this challenge, in the name of the United States government, is the very sort of untimely and impermissible collateral attack on prior proceedings that the doctrine of res judicata is designed to prevent.

Id.

Likewise, the State itself was a party to the Settlement Agreement, and was fully engaged in the 9019 Motion in 2005, and yet neither the State nor any agent of the State saw fit at any point during those proceedings to challenge the settlement on the ground that the proposed payment of legal fees by Worldcom to the Langston Law Firm was a violation of Mississippi state law. Thus, the State Auditor's attempt more than two years after the Settlement Order was entered to raise this challenge, in the name of the State, is precisely the type of "untimely and impermissible collateral attack on prior proceedings that the doctrine of *res judicata* is designed to prevent." Id.

The Appellees contend that two other cases support their contention that *res judicata* and estoppel should not apply to this dispute. Those cases are plainly distinguishable. In Petron, Inc. v. Sisk (Resp. Br. at 19), Case No. 93 C 3836, 1994 WL 465811 (N.D. Ill. Aug. 23 1994), the district court held that *res judicata* and estoppel did not bar future litigation of issues not raised in that case because there was no prior final judgment. The parties had failed to consummate the settlement of a civil action by exchanging the required releases. Id. at *1. By

contrast, the instant case not only had full releases among the parties, but the very important distinction of a final bankruptcy court order of approval.

In the other case relied on by the Appellees, Carter v. Rubin, the Court held that a race discrimination suit was not precluded by prior litigation of a gender discrimination suit. 14 F. Supp. 2d 22, 32 (D.D.C. 1998). In other words the subsequent action was sufficiently distinct so as not to be considered one that could or should have been brought in the earlier action. In the instant case there is no substantive distinction between the claims now attempted to be litigated in state court and the objection that should and could have been raised in 2005. They are exactly the same. Only the courtroom is sought to be changed.

The Bankruptcy Court should have held that claim preclusion principles barred the attempt to litigate the state law claims that should have been objections to the 2005 Settlement, as a core matter, and prior to reaching any decision on abstention. Had the Bankruptcy Court done so, it would have denied abstention or dismissed that motion as moot.

**(ii) Disputes Between Non-Debtors Are "Core" If They Involve The Construction Of A Bankruptcy Court Order**

The fact that the out-of-context state law dispute is between non-debtors is irrelevant to the analysis whether or not the application of claim preclusion makes this matter core. In In re Cedar Chemical Corp., the court held that it had "core jurisdiction" over the case even though "this contract dispute is between nondebtors, and the outcome will not affect the estate" (294 B.R. 224, 229 (Bankr. S.D.N.Y. 2003)) because "the preliminary question before the Court involves the interpretation of a post-petition contract and the Court's own order approving the transaction." Id.; see also Sterling Optical, 302 B.R. at 807 (holding that dispute between non-debtors over terms of post-petition contract and sale order was a "core proceeding").

Similarly, in Winstar,. the bankruptcy court held that a clause in its sale order retaining its jurisdiction to "resolve any disputes arising under or related to" was sufficient to confer "arising in" jurisdiction over the action between non-debtors. 2007 WL 4323003, at *5; see also Norkin v. DLA Piper Rudnick Gray Cary, LLP, No. 05 Civ. 9137(DLC), 2006 WL 839079, at *3 (S.D.N.Y. Mar. 31, 2006) ("The bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under [28 U.S.C.] § 157(b)(2)(A).") (quoting In re United States Lines, 197 F.3d 631, 637-38 (2d Cir. 1999)); Gentry v. Gentry, 207 B.R. 146, 149 (E.D. Ky. 1999) (holding that a debtor's post-petition attack on a settlement agreement between the debtor, the chapter 11 trustee, and the debtor's creditors was a core proceeding) (citing In re Ben Cooper, Inc., 896 F.2d 1394 (2d Cir. 1990)). Just as in Cedar Chemical, Sterling Optical and Winstar, the Plaintiffs' claims involve the construction and enforcement of the Bankruptcy Court's Settlement Order. This case therefore "arises in" a chapter 11 case and is a "core" proceeding.

The Appellees attempt to distinguish this well-developed line of authority by stating that "none of the cases involved a dispute over whether a provision in an agreement was illegal under state law. Further, the cases cited by the Langston Firm all involved obvious bankruptcy law issues and/or traditional core functions of the bankruptcy court." (Resp. Br. at 19.). The fact that the Appellees' particular argument is not the subject of the cited opinions is not a meaningful nor relevant distinction. As for the traditional core function of the bankruptcy court, it is a core function of any court to determine if claim preclusion applies in the context of a matter previously litigated before it.

In addition, the Appellees' argument that the enforcement of a settlement agreement and order do not involve the "core function" of a Bankruptcy Court is baseless. It is

well-settled law that the Bankruptcy Rule 9019 process constitutes a core proceeding. See, e.g., In re Bradley, No. 06-51470-RBK, 2007 WL 1500876, at *3 (Bankr. W.D. Tex. May 18, 2007). In bankruptcy proceedings, "as distinguished from ordinary civil cases, any compromise between the debtor and his creditors must be approved by the court as fair and equitable." Reynolds v. C.I.R., 861 F.2d 469, 473 (6th Cir. 1988). Indeed, "in considering a proposed compromise, the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the comprise is fair and equitable." Id. As the court in Reynolds explained, "the need for this safeguard is obvious. Any settlement between the debtor and one of his individual creditors necessarily affects the rights of other creditors by reducing the assets of the estate available to satisfy other creditors' claims." Id. Clearly, the Bankruptcy Court's obligations under Bankruptcy Rule 9019, including the application of claim preclusion in respect of any orders entered pursuant to Bankruptcy Rule 9019, constitute a "core function" of the Bankruptcy Court.[4]

**(b) This Case Would Have No Existence Outside Of Bankruptcy**

[4] Other cases cited by the Appellees do not contradict the conclusion that the application of claims preclusion to a bankruptcy court settlement order under Bankruptcy Rule 9019 is a core proceeding. The cases of In re LTV Steel Co., Inc., 357 B.R. 118 (N.D. Ohio 2006), and Bowen Corp., Inc. v. Security Pacific Bank Idaho, F.S.B., 150 B.R. 777 (Bankr. D. Idaho 1993), involved parties that waived objections to litigating their disputes in state court. In LTV Steel, neither party to the state court action was a party to the settlement order at issue, and the party seeking the bankruptcy court's enforcement of a previously entered settlement order allowed the state court action to proceed for eight months and had substantially engaged in the state court action before seeking the bankruptcy court's intervention. LTV Steel, 357 B.R. at 120. Similarly, in Bowen, the bankruptcy court specifically noted that the party seeking the bankruptcy court's jurisdiction had initiated the state court action itself, and only belatedly sought to remove the matter. Bowen, 150 B.R. at 783. Next, In re Kassover, 336 B.R. 74 (Bankr. S.D.N.Y. 2006) can be distinguished easily, as the case appears to have been tangentially related, at best, to the Debtors' confirmed chapter 11 plan, not the enforcement of a bankruptcy court order, and, as revealed by the Appellees' lengthy quote (Resp. Br. at 22), "[n]one of the [state court] claims . . . require this Court to interpret [the Plan] . . . ." 336 B.R. at 79. Finally, the Appellees' reliance on In re Kmart Corp., 359 B.R. 189 (Bankr. N.D. Ill. 2005), is misplaced, since the Court in Kmart applied the law of the Seventh Circuit and specifically declined to follow the opinion in Cedar Chemical from this district that would have required the Court to exercise "core" jurisdiction over the case. Id. at 196. Therefore, none of these cases provides support for the Appellees' argument.

This case, properly understood as the application of claim preclusion in the context of a fully litigated/settled and decided final order of the Bankruptcy Court, is also a core proceeding because it would have no existence outside of bankruptcy. "A proceeding is considered to be at the core of the bankruptcy 'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by nature, could arise only in the context of a bankruptcy case.'" In re Keene Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995) (quoting In re McCrory Corp., 160 B.R. 502, 506 (S.D.N.Y. 1993)); In re Thomas Van Riper, Inc., No. 97 CV 5332 (SJ), 1999 WL 184111, at *2 (E.D.N.Y. Mar. 23, 1999) (same) (holding that post-petition action for declaratory judgment in relation to the approval of a Bankruptcy Rule 9019 motion "arises in" a bankruptcy proceeding, because the issue was first raised after the filing of the chapter 7 petition, and thus, "would have no existence outside of bankruptcy").

**2.     This Case Is A "Core Proceeding" Because It Is A "Matter Concerning The Administration Of The Estate"**

This case is also a "core proceeding" because the Court's determination of whether claim preclusion protects the integrity of the prior Rule 9019 settlement process and the Settlement Order is a "matter concerning the administration of the estate" under 28 U.S.C. § 157(b)(2)(A). "The reach of bankruptcy jurisdiction encompasses all matters the outcome of which could affect the debtor or its reorganization." In re Ionosphere Clubs, Inc., 111 B.R. 423, 430 (Bankr. S.D.N.Y. 1990) (quoting In re Chateaugay Corp., 109 B.R. 613, 621 (S.D.N.Y. 1990)).

Courts have also routinely held that actions to implement or enforce bankruptcy court orders are "matters concerning the administration of the estate" under § 157(b)(2)(A). See In the Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1194 (7th Cir. 1993) (where the court held that it was reversible error for the bankruptcy court to abstain from

interpreting and enforcing its own order); In re TL Admin. Corp., 337 B.R. 827, 829 (Bankr. S.D.N.Y. 2006) (holding that the Bankruptcy Court had "core" jurisdiction under 28 U.S.C. § 157(b)(2)(A) and (O) because the dispute pertained to the interpretation and implementation of an agreement approved by the court); In re Prudential Lines, Inc., 170 B.R. 222, 230 (S.D.N.Y. 1994) (enforcement of "so ordered" stipulation and plan constituted core proceeding under 28 U.S.C. § 157(b)(2)(A)); Comco Assocs. v. Faraldi Food Indus., Ltd., 170 B.R. 765, 772 (E.D.N.Y. 1994) (holding that dispute between non-debtors was "inextricably linked" to bankruptcy court approved sale and therefore constituted a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O)).

Just as in Chicago, as well as in TL Admin. Corp., Prudential and Comco, the Bankruptcy Court has jurisdiction under 28 U.S.C. § 157(b)(2)(A) to implement and enforce the Settlement Order against the Appellees' improper attempt to turn a belated objection to the Settlement Order into an independent state law suit. For the reasons discussed above (see supra at 7-8), the Appellees' attempt to distinguish these cases on the grounds that they all involved "obvious bankruptcy law issues and/or traditional core functions" is baseless. (Resp. Br. at 19.) The approval and sanctity of settlements under Bankruptcy Rule 9019 are among the most important "core" functions performed by the Bankruptcy Court.

The Appellees rely heavily on the argument that this dispute will not have any economic impact upon the administration of the estate. (Resp. Br. at 13-14.) Again that argument misses the point. There is no exception to the claim preclusion principles of *res judicata*, collateral estoppel or waiver for subsequent litigation that will not affect a chapter 11 estate distribution. A Bankruptcy Court must be able to determine whether parties who were before it in 2005, and upon whom it relied in approving a settlement and entering a final order,

can two years later litigate an objection to the settlement that was never raised in the 2005 proceedings.

Furthermore, the Appellees contend that the Appellants were not parties to the underlying Settlement Agreement (Resp. Br. at 13), but, as previously briefed, the record establishes that the Appellants are intended third-party beneficiaries of the Settlement Agreement. Third party beneficiaries are considered parties to a settlement agreement for purposes of their ability to enforce its terms. See Celeste Trust Reg. v. CBQ, Inc., No. 03 Civ. 9650 (RMB), 2006 WL 2053311 (S.D.N.Y. July 21, 2006) (even though one of the defendants had failed to physically sign the settlement agreement, because the settlement agreement clearly identified the party as a released party, such failure did not prevent the Court from applying *res judicata* to bar any further action against that defendant); Bekhor v. Bear, Stearns and Co., Inc., No. 96 Civ. 4156, 2004 WL 2389751 (S.D.N.Y. Oct. 25, 2004) (because the release in a settlement applied to the "agents" of the defendants, and because the agents were specifically named, the defendant could seek to enforce the terms of the settlement agreement even though it was not a signatory to that agreement); see also O'Hora v. Powerex, Inc., No. 90-CV-1390, 1991 WL 163509, at *6 (N.D.N.Y. Aug. 21, 1991) (holding that a third-party beneficiary to a settlement agreement could also seek to enforce its terms, even though it was not a signatory to the settlement agreement).

Finally, the Settlement Agreement itself defines the State—an indisputable party to the Settlement Agreement—as including all of the State's "subdivisions, agencies, officer and representatives . . ." (APP39.) Thus, as agents of the State during the bankruptcy proceeding, it is equally indisputable that the Appellants were parties to the Settlement Agreement.

The Appellees also incorrectly assert that the Appellants provided no releases to the Debtors as part of the Settlement Agreement. (Resp. Br. at 14.) Section 8(ii) of the Settlement Agreement specifically names the Appellants and provides that the Debtors will pay to them $14 million in "counsel fees" and costs as Special Assistant Attorneys General for the State, "[i]n consideration of the release from the State," which is defined to include the Appellants. (APP45 at ¶ 8(ii).) Thus, by accepting $14 million under the Settlement Agreement, the Appellants agreed to release any additional claims they could have asserted against the State under the Retention Agreement, as well as any claims they could have asserted against the Debtors. (Id.)

This matter therefore concerns the administration of the Debtors' estate and is a core proceeding. The Abstention Order should be reversed.

### B. The Appellees Cannot Establish Four Of The Remaining Elements Required For Mandatory Abstention

Mandatory abstention would not apply to this case even if it were a non-core proceeding (which it is not). The Appellees must establish all six elements under 28 U.S.C. § 1334(c)(2) for mandatory abstention to apply. See In re AHT Corp., 265 B.R. 379, 383 (Bankr. S.D.N.Y. 2001) ("It is clear from the statute itself that all six must be found for abstention to be mandatory."). They have not and cannot do so.

#### 1. This Proceeding Does Not Arise Under State Law

In order for mandatory abstention to apply, the Adversary Proceeding must arise under state law. It does not. Only the Counterclaim sounds in state law.

Here, the Appellees repeat the error of the Bankruptcy Court by focusing solely on their Counterclaim. However, the Appellants' threshold claims for *res judicata*, estoppel and waiver each relate to the interpretation, enforcement and finality of the Settlement Order entered

by the Bankruptcy Court, which precludes the assertion of the very state law claims that form the sole basis of the Appellees' Abstention Motion. The *res judicata* effect and finality of the Settlement Order, pursuant to Bankruptcy Rule 9019, are all exclusively matters of federal bankruptcy law, not state law. See, e.g., In re Colarusso, 382 F.3d 51, 57 (1st Cir. 2004) ("The scope of the bankruptcy court's sale order under the Code is an issue of federal law that weighs against abstention.") (internal quotation omitted); In re Si Yeon Park, Ltd., 198 B.R. 956, 963 (Bankr. C.D. Cal. 1996) ("Interpreting the scope and effect of bankruptcy court orders modifying the automatic stay in a pending bankruptcy case raises primarily issues of federal law, not state law."); see also In re U.S.H. Corp. of New York, 280 B.R. 330, 338 (Bankr. S.D.N.Y. 2002) ("[T]he policy of this district does not favor abstention in matters involving a court's interpretation of its own orders.").[5]

The Appellees' assertion of alleged "state law" claims in their Counterclaim and the State Court Action does not satisfy this element. None of these so-called "state law" claims impact the Appellants' right to the relief they have requested under federal law pursuant to the terms of the Settlement Order. See U.S.H. Corp., 280 B.R. at 338 ("Because [the Bankruptcy] Court can decide as a matter of federal bankruptcy law whether the State Court Action violates the Confirmation Order and sections 1141 and 524 of the Bankruptcy Code, without the need to decide any issue of state law, there is no reason for [the Bankruptcy] Court to abstain from ruling."); In re RNI Wind Down Corp., 348 B.R. 286, 296-97 (Bankr. D. Del. 2006) (holding that existence of alleged state law claims did not satisfy this element because the bankruptcy

[5] In an inapposite attempt to distinguish this line of cases, the Appellees allege that this dispute does not involve the "scope" of the Settlement Order, but rather rests upon "whether a non-party to such an order may assert a claim under state law to monies previously paid to a nondebtor pursuant to such an order." (Resp. Br. at 23.) Plainly, by the Appellees' own recitation of the issues in this case, this matter does involve an "interpretation of the scope of a bankruptcy court order[s]" (Resp. Br. at 23), since whether the Appellants can enforce the terms of the Order against the Appellees inevitably entails the establishment of the Order's scope.

proceeding did not "change or determine any of the legal issues" that were involved in the state law case).

Here, the relevant question is not whether the Appellees can state a claim under Mississippi law; rather, the relevant inquiry is whether the Settlement Order is a final and binding order that forecloses the Appellees from any subsequent litigation of issues that could and should previously have been raised under any law. The Bankruptcy Court erroneously concluded that a determination on the merits of the Appellees' state law claims should precede a determination of the Appellants' federal law preclusion claims.

In sum, this matter revolves around the sanctity and finality of a federal court order, and therefore does not arise under state law. Mandatory abstention is therefore inapplicable. The Abstention Order should be reversed.

**2. Section 1334 Of The Judicial Code Is Not The Only Source Of The Bankruptcy Court's Jurisdiction Over This Case**

Mandatory abstention also does not apply because 28 U.S.C. § 1334 is not the only source of the Bankruptcy Court's jurisdiction over this case. In the Settlement Order, the Bankruptcy Court retained jurisdiction "to the extent necessary to enforce and resolve any disputes arising over the consummation of the [Settlement] Agreement . . . ." (APP82.)

The Bankruptcy Court's retention of jurisdiction clause alone eliminates any basis for abstention. McClelland v. Grubb & Ellis Consulting Servs. Co., 377 B.R. 446, 455 (Bankr. S.D.N.Y. 2007) (holding that Bankruptcy Court's retention of jurisdiction in the confirmation order was sufficient to render the post-confirmation dispute a core proceeding, unsusceptible to mandatory abstention); see also Am. Booksellers Ass'n, Inc. v. Houghton Mifflin Co., Inc., No. 94 Civ. 8566 (JFK), 1998 WL 436364, at *3 (S.D.N.Y. July 28, 1998) (the district court held that

its express retention of jurisdiction to enforce its consent order settling a lawsuit gave it exclusive jurisdiction to effectuate such order).

The Appellants' reasoning is not "circular," as the Appellees allege. (Resp. Br. at 24.) The inherent power of a court to enforce its own orders is not tied to, or dependent on, any particular federal statute. Indeed, as the Court held in LTV Corp. v. Back, a Bankruptcy Court has jurisdiction to enforce its own orders "wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334." 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996) (emphasis added). Section 1334 of the Judicial Code is not the only source of the Bankruptcy Court's jurisdiction over this case. Mandatory abstention is therefore inapplicable. The Abstention Order should be reversed.

### 3. The Appellees Had Not "Commenced" The State Court Action At The Time The Appellants Filed This Adversary Proceeding

Mandatory abstention also requires that a state action "is commenced." 28 U.S.C. § 1334(c)(2). The "vast majority of the jurisprudence" on this factor "holds that if the state court proceeding had not been filed and was not pending when the bankruptcy case was filed, then mandatory abstention does not apply because the proceeding does not meet the 'is commenced' criteria of the statute." In re Consol. Lewis Inv. Corp.-Ltd. P'ship, 78 B.R. 469, 476 (Bankr. M.D. La. 1987); see also In re Container Transp., Inc., 86 B.R. 804, 805 (Bankr. E.D. Pa. 1988) (the presence of a state court proceeding "at the time that a proceeding is initiated in the bankruptcy court" is a requirement under 28 U.S.C. § 1334(c)(2) that is "[c]onsistent with all known authority") (emphasis added).

Here, the Appellees manufactured the abstention counterclaim by filing their State Court Action after the bankruptcy case was commenced and the briefing schedule on the Appellants' Motion for Summary Judgment was set. (APP479-APP485.). This Court should

reject the Appellees' invitation to follow the minority line of cases that would allow the "is commenced" element to be satisfied by an after-the-fact filing by the party seeking abstention. (Resp. Br. at 25-26.) The purpose of the "is commenced" element is to allow mandatory abstention only in cases where a state court action is actually and legitimately pending before the bankruptcy action, so as not to encourage parties, such as the Appellees, to attempt to manufacture an abstention argument through a late strategic filing in state court. See In the Matter of Rimsat, Ltd., 98 F.3d 956, 962 (7th Cir. 1996) (holding that section 1334 "clearly . . . does not require the bankruptcy court to abstain on the basis of a proceeding instituted after, and in an effort to defeat, the bankruptcy proceeding—strategic conduct that is not to be encouraged").

The Appellees had not "commenced" the State Court Action as of the filing of this case on September 21, 2007. Mandatory abstention therefore does not apply to this case.

**4. This Proceeding Cannot Be "Timely Adjudicated" In State Court**

The final element required for mandatory abstention is that the state court can "timely adjudicate" the proceeding. The Appellees have not satisfied this element.

"More than a 'naked assertion' is needed to prove that this proceeding can be timely adjudicated in a state court." In re Ames Dep't Stores, Inc., No. 01-8153 (AJG), 2006 WL 1288586, at *12 (Bankr. S.D.N.Y. Apr. 19, 2006) (quoting In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 331 (S.D.N.Y. 2003)). "Bankruptcy Courts have evaluated their ability to resolve a proceeding faster than another court as a factor weighing against mandatory abstention when considering the 'timely adjudication' factor." Ames, 2006 WL 1288586, at *12; AHT Corp., 265 B.R. at 388 ("The requirement of timely adjudication necessarily entails a comparison of the time required for litigation in the State Court Action as compared with the litigation schedule in [the Bankruptcy] Court.").

Here, neither the Appellees nor the Bankruptcy Court have offered any reason that the state court can resolve this case faster than the Bankruptcy Court. Indeed, all available evidence suggests that the Bankruptcy Court can resolve this proceeding much faster than a state court. First, the Bankruptcy Court is in a much better position to timely adjudicate the Appellants' federal law claims. The case has been before the Bankruptcy Court for almost a year. Briefing on the Summary Judgment Motion—a motion that the Appellants submit will be dispositive of the entire dispute—has been completed in front of the Bankruptcy Court. Conversely, in the State Court Action, no dispositive motions have been submitted and the state court will have to start the case from scratch.

Second, unlike the state court, the Bankruptcy Court is intimately familiar with all of the facts leading up to the Settlement Agreement, the subsequent hearing on the Settlement Motion, and the terms of the Settlement Order. The state court has none of this knowledge and bankruptcy law is undoubtedly outside its area of expertise. As such, the Bankruptcy Court will no doubt be in a position to adjudicate this matter in a far more timely and efficient manner than the state court. The Abstention Order should thus be reversed.

## II. DISCRETIONARY ABSTENTION IS NOT WARRANTED IN THIS DISPUTE

The Bankruptcy Court abused its discretion in concluding that discretionary abstention under 28 U.S.C. § 1334(c)(1) was appropriate in this case. The Court should not have reached abstention without first adjudicating claim preclusion. (It does not appear that the Bankruptcy Court intended to abstain to the state court to determine if the state law claims should be precluded on the basis of the state's failure to bring them before the Bankruptcy Court in 2005; but had it so intended it would also be a clear abuse of discretion.) Courts in this district apply a presumption against exercising permissive abstention. See Rahl v. Bande, 316 B.R. 127, 135 (S.D.N.Y. 2004) ("Because district courts have a 'virtually unflagging obligation . . . to

exercise the jurisdiction given them,' there is a presumption in favor of the exercise of federal jurisdiction and against abstention.") (emphasis added) (internal citations omitted). The Bankruptcy Court failed to apply the presumption against abstention and did not support many of its conclusions on the twelve applicable factors.[6] The Abstention Order should be reversed.

**A. State Law Issues Do Not Predominate Over Bankruptcy Issues**

One factor the Bankruptcy Court must consider is whether the state law issues predominate over the bankruptcy law issues. They do not.

As discussed above (see supra § A.1.(a)(i)), the state law issues raised in the Appellees' Counterclaim are irrelevant to this case. The Appellants' claims of *res judicata*, estoppel and waiver each relate to the interpretation, enforcement and finality of the Settlement Order entered by the Bankruptcy Court and preclude the consideration of the Appellees' state law claims altogether. The interpretation and enforcement of a Bankruptcy Court's order is a matter of federal law, not state law. See, e.g., Colarusso, 382 F.3d at 57 ("The scope of the bankruptcy court's sale order under the Code is an issue of federal law that weighs against abstention.") (internal quotation omitted); Si Yeon Park, 198 B.R. at 963 ("Interpreting the scope and effect of bankruptcy court orders modifying the automatic stay in a pending bankruptcy case raises primarily issues of federal law, not state law."); see also U.S.H. Corp., 280 B.R. at 338 ("[T]he policy of this district does not favor abstention in matters involving a court's interpretation of its own orders.").

The Appellees defend the Bankruptcy Court's lack of action on claims preclusion by arguing that the Court already "ruled" that the Appellees' claims do not constitute a collateral

[6] The Appellants rely on their Opening Brief for a discussion of all twelve factors, and will only address those points not already addressed in the Opening Brief.

attack on the Settlement Order. (Resp. Br. at 30.) The Bankruptcy Court did not rule with respect to claims preclusion at all, due to its misplaced focus on state law issues that have no impact on the Appellants' well established federal law rights.

The Bankruptcy Court's focus on irrelevant state law issues before deciding the federal law issues raised by the Appellants' Summary Judgment Motion was an abuse of discretion that justifies reversal of the Abstention Order. See Chicago, 6. F.3d at 1191 (where the court held that it was an abuse of discretion for the reorganizing court to abstain when it could resolve the issue "without deciding any issue of state law"); U.S.H. Corp., 280 B.R. at 338 ("Because [the Bankruptcy] Court can decide as a matter of federal bankruptcy law whether the State Court Action violates the Confirmation Order and sections 1141 and 524 of the Bankruptcy Code, without the need to decide any issue of state law, there is no reason for [the Bankruptcy] Court to abstain from ruling."); RNI Wind Down, 348 B.R. at 296-97 (holding that existence of alleged state law claims did not satisfy this element because the bankruptcy proceeding did not "change or determine any of the legal issues" that were involved in the state law case).

**B. The Burden On The Bankruptcy Court's Docket Is Outweighed By Considerations Of Judicial Economy**

Another factor is the burden on the Bankruptcy Court's docket. Contrary to the Appellees' assertion, this matter could be disposed of in its entirety through an order granting the Summary Judgment Motion, which was completely briefed when the Court decided to abstain. The Appellees allege that because the Appellants moved for summary judgment on only two out of six of the counts in their Complaint, "there are extensive proceedings ahead." (Resp. Br. at 32.) This is not true. The remaining counts of the Appellants' complaint were pleaded in the alternative, in the event that the Appellants were unable to obtain a favorable judgment on Count I or II alone.

It would indisputably amount to a waste of judicial resources to begin briefing anew on the Summary Judgment Motion in front of a state court that has no familiarity with the Debtors, the Settlement Agreement, the Settlement Order, Bankruptcy Rule 9019 motions or the interpretation or enforcement of Bankruptcy Court orders. Accordingly, this factor also weighs against abstention.

**C. The Appellants' Filing Of This Case In Bankruptcy Court Was Not Motivated By Forum Shopping**

Another factor the Bankruptcy Court should have considered is whether the Appellants' initiation of this proceeding in Bankruptcy Court was motivated by forum shopping. Notwithstanding the Appellees' attempt to cast the Appellants' claims as insincere (Resp. Br. at 32), the Appellants had no choice but to file their claims in the Bankruptcy Court and, therefore, were not in any way motivated by forum shopping. It was the Bankruptcy Court that entered the Settlement Order, and it was the Bankruptcy Court that retained jurisdiction to enforce its terms. (APP81-APP82.) Indeed, the Appellees' untimely State Court Action—filed months after the Appellants' commenced this case is the only action of any of the parties that could be characterized as forum shopping.

Because all of the relevant factors weigh against abstention, the Bankruptcy Court should not have abstained from this dispute. The Bankruptcy Court therefore abused its discretion in doing so and its decision should be reversed. See In re DeLorean Motor Co., 155 B.R. 521, 524 (9th Cir. 1993) (Bankruptcy Court abused its discretion when it granted discretionary abstention under 28 U.S.C. § 1334(c)(1) where court incorrectly determined that dispute was not core proceeding and that outcome would not impact administration of the debtor's estate); Chicago, 6 F.3d at 1194 (the reorganization court abused its discretion when it granted discretionary abstention under 28 U.S.C. 1334(c)(1) where court incorrectly determined

that plaintiff was engaged in forum shopping, that abstention would serve judicial economy, and that a significant question of state law was involved).

## CONCLUSION

For the reasons stated above, the Appellants, the Langston Law Firm, PA, Joseph C. Langston, and Timothy R. Balducci respectfully request that this Court enter an Order (a) reversing the Abstention Order and remanding the matter back to the Bankruptcy Court so that it may rule upon the pending Summary Judgment Motion, or in the alternative, (b) remanding the matter back to the Bankruptcy Court for further proceedings on the Abstention Motion.

Dated: August 8, 2008

Respectfully submitted,

By: /s/ Michael P. Richman

Michael P. Richman (MR 2224)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 682-7474
Fax: (212) 682-2329
email: mrichman@foley.com

-and-

Geoffrey Goodman (*admitted via pro hac vice)*
Joanne Lee (*admitted via pro hac vice*)
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60610
Phone: (312) 832-4500
Fax: (312) 832-4700

*Attorneys for Appellants The Langston Law Firm, PA, Joseph C. Langston and Timothy R. Balducci*